UNITED STATES of America, Plaintiff-Appellee,

v.

Lorraine LEWIS, Defendant-Appellant.

No. 77–5376.

United States Court of Appeals, Sixth Circuit.

Argued June 14, 1978.

Decided Dec. 5, 1978.

Steven W. Reifman, John W. Tapp, Kenneth R. Sasse, Detroit, Mich., for defendant-appellant.

James K. Robinson, U.S. Atty., Detroit, Mich., Keith E. Corbett, Asst. U.S. Atty., Detroit, Mich., for plaintiff-appellee.

Before EDWARDS and ENGEL, Circuit Judges and NEESE, District Judge.*

PER CURIAM.

Appellant was convicted on six counts of an indictment, two of them involving making false statements within the jurisdiction of a department or agency of the United States, in violation of 18 U.S.C. § 1001 (1976), and four of them for using the mails in furtherance of a scheme to commit fraud, in violation of 18 U.S.C. § 1341 (1976).

The proofs showed that appellant had falsely denied that she was employed and receiving income at the time she submitted an application form and later a redetermination of eligibility form in order to obtain and to continue to receive benefits under the Aid to Families of Dependent Children (AFDC) program operated by the State of Michigan Department of Social Services.

It was stipulated in the district court that the AFDC program is jointly funded by state and federal governments, with each contributing 50%. Further, it is clear from this record that although appellant dealt with the Michigan Department of Social Services, the AFDC program is authorized by and largely controlled by standards established by federal law. *See* 42 U.S.C. §§ 601–610 (1976), and 42 U.S.C. §§ 1381–1383c (1976). Because the program was operated by the State of Michigan and because there was no reference to any federal involvement on either of the forms which Lewis prepared or on the benefit checks which she received, she urges that as a matter of law, any fraud on her part was not "within the jurisdiction of any department or agency of the United States." She further claims that the trial court erred in declining to give her requested instructions to the jury to the effect that knowledge of federal government involvement in the AFDC program was an essential element of the offense and had to be proved by the government.

18 U.S.C. § 1001 provides:

Whoever, in any matter within the jurisdiction of any department or agency of the United States knowingly and willfully falsifies, conceals or covers up by any trick, scheme, or device a material fact, or makes any false, fictitious or fraudulent statements or representations, or makes or uses any false writing or document knowing the same to contain any false, fictitious or fraudulent statement or entry, shall be fined not more than $10,000 *or imprisoned not more than five years,* or both.

Federal participation in state AFDC programs is one of four "categorical assistance" *programs* established by Title IV of the Social Security Act of 1935, ch. 531, tit. IV, 49 Stat. 627, *as amended* (codified in scattered sections of 42 U.S.C.). The Supreme Court has characterized AFDC as

* Hon. C. G. Neese, District Judge, United States District Court for the Eastern District of Tennessee, sitting by designation.

based upon a scheme of "cooperative federalism." *King v. Smith*, 392 U.S. 309, 316, 88 S.Ct. 2128, 20 L.Ed.2d 1118 (1968). While states are not required to participate in the program, those who do seek the benefits of Title IV of the Act are required to submit an AFDC plan for the approval of the Secretary of Health, Education and Welfare. *King v. Smith, supra*, 392 U.S. at 316, 88 S.Ct. 2128.

The integrity and honesty of the AFDC program is a matter of direct federal concern and the Act expressly provides that the Secretary may withhold all further payments to a state where he determines that "in the administration of the plan there is a failure to comply substantially with any provision required by Section 602(a) of this title to be included in the plan." 42 U.S.C. § 604(a)(2). Michigan's currently approved AFDC plan would not comply with federal requirements if in practice it constantly did not take into account the other sources of income of applicants. 42 U.S.C. § 602(a)(7). We, therefore, conclude that when an applicant for benefits falsifies eligibility information, she directly affects the right of the state to participate in the federal program and to obtain its share of federal reimbursement moneys.[1]

18 U.S.C. § 1001 had its origin in an 1863 statute which was drafted in "the wake of a spate of frauds" on the government. *United States v. Bramblett*, 348 U.S. 503, 504, 75 S.Ct. 504, 506, 99 L.Ed. 594 (1955). Limited in the original version to frauds against the government by military personnel, the "false statements" section of the Act was linked to a "false claims" section of the Act, which proscribed the presentation of fraudulent claims "upon or against the Government of the United States." Act of March 2, 1863, ch. 67, 12 Stat. 696. The use of a false statement was prohibited when made "for the purpose of obtaining, or aiding in obtaining, any approval or payment of any claim." *Id.* The offense was not limited to matters "within the jurisdiction of any department or agency of the United States."

From 1863 to 1934 the coverage of the Act was enlarged from time to time. In 1873, the statute was extended to cover "every person," not merely military personnel. *Bramblett, supra*, 348 U.S. at 506 n.2, 75 S.Ct. 504. A further revision in 1918 proscribed "false statements" if made "for the purpose and with the intent of cheating and swindling or *defrauding the Government of the United States*" as well as if made for the purpose of obtaining a false claim. (Emphasis added). This intent language was interpreted by the Supreme Court in *United States v. Cohn*, 270 U.S. 339, 46 S.Ct. 251, 70 L.Ed. 616 (1926), as not proscribing false statements which had been made to a customs collector to obtain entry into the United States of certain merchandise without the presentation of a bill of lading. Because the property itself was not owned by the Government nor was there any import duty owing, the Supreme Court held that an indictment under the 1918 version of the statute was insufficient because if failed to show that the statements were made either with the purpose of obtaining approval of a "claim" against the government or for the purpose of "defrauding" the government. The Court limited the language to conduct intended to cause pecuniary or property loss to the government.

Dissatisfaction with this construction of the Act led to a 1934 revision of the statute and to the employment for the first time of the present language proscribing the making of false or fraudulent statements "in any matter within the jurisdiction of any department or agency of the United States . . . ." Act of June 18, 1934, ch. 587, 48 Stat. 996.

---

1. In fact, the Act apparently contemplates that the federal government shall share in the recovery of any benefits which were erroneously paid. *See* 42 U.S.C. § 603(b). In addition, regulations require each state program to include a "quality control system" by which sample cases are examined to determine ineligible recipients, overpayments, and even underpayments. 45 C.F.R. § 205.40 (1977). That regulation also requires the state agency to "take appropriate corrective action on improperly authorized or denied assistance . . . ." *Id.* at § 205.40(b)(iv).

We believe, from the legislative history of the foregoing language, that the 1934 amendment was specifically aimed at broadening the language of the statute to overcome the earlier restrictive interpretations and to reach other types of falsifications made to government agencies. *United States v. Gilliland*, 312 U.S. 86, 93, 61 S.Ct. 518, 85 L.Ed. 598 (1941). A 1948 revision of the statute brought it to basically its present form, but severed the false claims provision from the false statements provision, the former being codified in 18 U.S.C. § 287, while the false statement section became 18 U.S.C. § 1001. Act of June 25, 1948, ch. 645, 62 Stat. 683.

 Most cases in which Section 1001 has been applied have emphasized, one way or another, the defendant's awareness of federal involvement. *See, e. g., United States v. Lange*, 528 F.2d 1280 (5th Cir. 1976); *United States v. Candella*, 487 F.2d 1223 (2d Cir. 1973), *cert. denied*, 415 U.S. 977, 94 S.Ct. 1563, 39 L.Ed.2d 872 (1974); *Ebeling v. United States*, 248 F.2d 429 (8th Cir.), *cert. denied*, 355 U.S. 907, 78 S.Ct. 334, 2 L.Ed.2d 261 (1957). And in *United States v. Cella*, 568 F.2d 1266 (9th Cir. 1978), the court rejected a similar defense, but only after concluding that the defendants must have known upon the facts of the case that the hospital's records of expenses would eventually be used to prepare Medicare reimbursement reports sent to the federal government.

Nevertheless, the language of Section 1001 does not require such specific proof that the person committing the fraud did so with knowledge that the fraudulent statement would affect federal funds and we decline to write any such requirement into the Act. *United States v. Feola*, 420 U.S. 671, 95 S.Ct. 1255, 43 L.Ed.2d 541 (1975), involving essentially the same problem (although not in a welfare fraud context) is particularly persuasive to us here. Referring to a statute which made it a federal offense to assault a federal officer, 18 U.S.C. § 111 (1976), the Supreme Court observed:

§ 111 cannot be construed as embodying an unexpressed requirement that an assailant be aware that his victim is a federal officer. All the statute requires is an intent to assault, not an intent to assault a federal officer.

420 U.S. at 684, 95 S.Ct. at 1264.

On this appeal there can be no dispute that the offense we deal with is "within the jurisdiction" of the federal government within the meaning of 18 U.S.C. § 1001. To paraphrase *United States v. Feola*, § 1001 cannot be construed as imposing an unexpressed requirement that a person committing welfare fraud be aware that the fraud is being perpetrated upon the federal government. It therefore follows that the knowledge of federal involvement is not an element of the offense and that the trial court did not err in refusing the defendant's request to instruct the jury that it was.

The court finds the other grounds asserted by appellant for reversal to be without merit.

The judgment of the district court is affirmed.