**UNITED STATES of America,**
**Plaintiff–Appellant,**

**v.**

**Alga HOPE, Jr., Defendant–Appellee.**

**No. 88–5443.**

United States Court of Appeals,
Eleventh Circuit.

Dec. 27, 1988.

Dexter W. Lehtinen, U.S. Atty., Richard Scruggs, Linda Collins Hertz, Harriet R. Galvin, Asst. U.S. Attys., Miami, Fla., for plaintiff-appellant.

Joseph Paglino, Miami, Fla., for defendant-appellee.

Before TJOFLAT and FAY, Circuit Judges, and FAWSETT *, District Judge.

FAY, Circuit Judge:

This is an interlocutory appeal brought by the United States from an order in the district court granting the motion of defendant-appellee Alga Hope, Jr. to dismiss Count I of a five-count indictment. Count I charges the defendant with conspiracy to defraud the United States and to conceal and cover up material facts in a matter within the jurisdiction of an agency or department of the United States, in violation of 18 U.S.C. § 371.[1] The Government contends that Count I contains the elements of the offense charged and that the sufficiency of the Government's evidence is a matter of proof to be determined at trial. We find that under *Tanner v. United States,* 483 U.S. 107, 107 S.Ct. 2739, 97 L.Ed.2d 90 (1987), Count I of the indictment fails to state a violation of § 371 because it alleges neither a direct nor indirect fraud on the United States. We therefore affirm the order of the district court.

## I. BACKGROUND

The facts as alleged by the Grand Jury are as follows: Alga Hope, Jr. was the President and Executive Director of the Economic Development Corporation of Dade County, Inc. (EDCO), a nonprofit Florida corporation, which was organized in the aftermath of the 1980 riots in Miami to receive and distribute federal funds in the form of loans to minority owned businesses in Dade County, Florida. The funds were provided to Metropolitan Dade County as "Community Development Block Grants," which EDCO would request from the Dade County Office of Community and Economic Development (OCED). Throughout Hope's tenure with EDCO, he and Hilario James were the principals of three Florida corporations, among them, Sunbelt Recycled Rubber Collection Centers, Inc. (Sunbelt). Hope and James conspired to obtain through EDCO a federally funded loan of $75,000 for Sunbelt.

The indictment charges that in furtherance of the conspiracy, Hilario James resigned his position as business analyst and finance specialist with EDCO in order to apply to EDCO for the Sunbelt loan. Hope then used his position at EDCO to vote in favor of the loan to Sunbelt at a loan committee meeting, without disclosing his part ownership of the company. Also in furtherance of the conspiracy, Hope recommended to OCED officials that the Sunbelt loan be approved and that federal funds be drawn down to pay the loan. Hope allegedly submitted false documents to OCED in support of the loan application.

Hope and James were indicted on November 20, 1986 in a five-count indictment for violations of 18 U.S.C. § 371 (conspiracy to defraud the government and to cov-

---

* Honorable Patricia C. Fawsett, U.S. District Judge for the Middle District of Florida, sitting by designation.

1. 18 U.S.C. § 371 provides, in full, as follows:

    If two or more persons conspire either to commit any offense against the United States, or to defraud the United States, or any agency thereof in any manner or for any purpose, and one or more of such persons do any act to effect the object of the conspiracy, each shall be fined not more than $10,000 or imprisoned not more than five years, or both.

    If, however, the offense, the commission of which is the object of the conspiracy, is a misdemeanor only, the punishment for such conspiracy shall not exceed the maximum punishment provided for such misdemeanor.

er up material facts within the jurisdiction of the Department of Housing and Urban Development (HUD) (Count I); 18 U.S.C. § 1001 [2] (making false statements to HUD) (Count II); and 18 U.S.C. § 1951 (extortion) (Counts III–IV).[3] Count I sets out seventeen overt acts committed by Hope or James in furtherance of the conspiracy. (Appendix A) None of the alleged overt acts mentions any communication or transaction between either of the defendants and any agency or department of the United States.

The defendant filed a motion to dismiss the indictment on March 15, 1988, claiming that under *Tanner v. United States, supra*, the indictment failed to allege the elements of a § 371 conspiracy. The court held a hearing on April 14, 1988 on the motion to dismiss and heard reargument on the motion on May 12, 1988. The court ruled that *Tanner* mandated a dismissal of the conspiracy count, but that the case would go to trial on the remaining counts. Before selection of a jury, the Government filed with our court a notice of appeal and a motion for an emergency stay of the trial proceedings. A hearing was held by telephone before the Honorable James C. Hill, Circuit Judge, on the Government's motion for emergency stay. This motion was denied as moot once the district court granted a motion to continue pending the outcome of this appeal.

## II. THE TANNER CASE AND § 371

In *Tanner*, the Supreme Court held that in a § 371 conspiracy, the target of the conspiracy must be the United States or one of its agencies or departments, either directly or through a third party. Defendants Tanner and Conover were indicted and

convicted of *inter alia*, conspiring to defraud the United States by impairing, impeding, obstructing and defeating the lawful functions of the Rural Electrification Administration (REA), a credit agency of the United States Department of Agriculture, in violation of 18 U.S.C. § 371.[4] Defendant Conover, the procurement manager for Seminole Electric Cooperative, Inc., a Florida corporation, improperly aided codefendant Tanner with respect to a contract bid on a construction project for Seminole. The construction contract was paid with loan money guaranteed by REA. Conover also made material misrepresentations to a bonding company regarding the project's state of completion.

On appeal to our court, *United States v. Conover*, 772 F.2d 765 (11th Cir.1985) the conviction was affirmed. Before the Supreme Court, the defendants argued that at most, the evidence showed that Seminole, a private corporation, was defrauded, and that absent a direct fraud on the REA a conviction for conspiracy to defraud the United States could not stand. The Government made two arguments: (1) that a conspiracy to defraud the United States may be effected by third parties; and (2) that Seminole, as the recipient of federal financial assistance and supervision could be treated as the United States under § 371. The Supreme Court rejected the latter argument:

> The conspiracies criminalized by § 371 are defined not only by the nature of the injury intended by the conspiracy, and the method used to effectuate the conspiracy, but also—and most importantly —by the *target* of the conspiracy.... [T]he Government, in arguing that § 371

---

**2.** 18 U.S.C. § 1001 provides, in full, as follows:

Whoever, in any matter within the jurisdiction of any department or agency of the United States knowingly and willfully falsifies, conceals or covers up by any trick, scheme, or device a material fact, or makes any false, fictitious or fraudulent statements or representations, or makes or uses any false writing or document knowing the same to contain any false, fictitious or fraudulent statement or entry, shall be fined not more than $10,000 or imprisoned not more than five years, or both.

**3.** James subsequently pleaded guilty to some of the charges.

**4.** The Supreme Court has interpreted the scope of the phrase "to defraud" under § 371 to reach "any conspiracy for the purpose of impairing, obstructing or defeating the lawful function of any department of Government." *Dennis v. United States*, 384 U.S. 855, 861, 86 S.Ct. 1840, 1844, 16 L.Ed.2d 973 (1966); *see also Hammerschmidt v. United States*, 265 U.S. 182, 188, 44 S.Ct. 511, 512, 68 L.Ed. 968 (1924).

covers conspiracies to defraud those acting on behalf of the United States, asks this Court to expand the reach of a criminal provision by reading new language into it. This we cannot do. *Tanner, supra,* 107 S.Ct. at 2752–53.

The Court did not, however, reverse the convictions. The Court accepted the Government's first argument, that a § 371 conviction could be based upon a conspiracy to cause some third party to defraud the United States unwittingly. The case was thus remanded to our court to determine if there was sufficient evidence to show that the defendants conspired to cause Seminole to make false statements to REA.[5]

### III. APPLICATION OF TANNER

■ Under *Tanner,* Count I of the indictment in this case can survive only if it alleges that an object of the conspiracy was to defraud HUD, either directly or by causing EDCO to perpetrate the fraud. A close examination of Count I reveals that it alleges no such thing. The Government contends that the dismissal of Count I was error because the facts as alleged are sufficient to charge a § 371 conspiracy. However, Count I of the indictment states quite specifically that Hope's conduct was aimed directly and exclusively at agencies and officials of Dade County. (Appendix A). The accusatory language in Count I closely tracks the language of the statute, but it does not allege any object of the conspiracy or overt act which is directed at the United States. Since under *Tanner* EDCO may not itself be treated as the United States, Count I fails to allege a conspiracy to defraud the United States directly.

It is a closer question whether Count I permits the Government to prove at trial that Hope conspired to manipulate EDCO

in order that HUD and the United States be defrauded indirectly. The Court noted in *Tanner* that § 371, covering conspiracies to defraud "in any manner or for any purpose" does not limit the method which may be used to defraud the United States: "A method that makes uses of innocent individuals or businesses to reach and defraud the United States is not for that reason beyond the scope of § 371." *Tanner* at 2752; *see also United States v. Bornstein,* 423 U.S. 303, 309, 96 S.Ct. 523, 528, 46 L.Ed.2d 514 (1976); *United States ex rel. Marcus v. Hess,* 317 U.S. 537, 63 S.Ct. 379, 87 L.Ed. 443 (1943) (fact that a false claim passes through a third party on its way to the government does not preclude liability under the False Claims Act).

■ We agree, as a general matter, with the Government's contention that it need not have specified in a separate clause of the indictment that the conspiracy contemplated an *indirect* fraud on the United States in order for the Government to introduce evidence in support of that theory.[6] In this case, however, the indictment as framed fails to allege a conspiracy to defraud the United States either directly *or* indirectly. By explicitly naming county agencies as the sole and ultimate targets of the conspiracy in Count I, the Government precludes itself from claiming that it "fully intended to present sufficient proof" that HUD was either directly or indirectly defrauded by the defendant. (Brief for appellant at 10)

The former Fifth Circuit has held "that if an indictment enumerates the particular facts alleged to constitute the element of a charged crime and the proof makes out the elements in a different manner, a fatal variance results." *United States v. Guthartz,* 573 F.2d 225, 228 (5th Cir.), *cert. denied,* 439 U.S. 864, 99 S.Ct. 187, 58 L.Ed.

---

5. On remand, this court reversed the convictions of Tanner and Conover, finding insufficient evidence to support the theory that the defendants conspired to induce Seminole to make misrepresentations to REA. *United States v. Conover,* 845 F.2d 266 (11th Cir.1988).

6. In *Tanner,* the Government did allege an indirect fraud as a separate object of the conspiracy:

It was further a part of the conspiracy that the defendants would and did cause Seminole Electric to falsely state and represent to the Rural Electrification Administration that an REA-approved competitive bidding procedure had been followed in awarding the access road construction contracts. *Tanner, supra,* 107 S.Ct. at 2754.

2d 173 (1987).[7] Under *Tanner*, the particular facts alleged in the indictment in this case even if taken as true, do not state a violation of § 371. To allow the Government to introduce evidence to show that the defendants violated § 371 by conspiring to defraud the United States would be to permit a fatal variance from the words of the indictment.

## IV. TWO OBJECTS ARGUMENT

■ The Government contends that a second reason that the decision of the district court should be reversed is that the conspiracy charged in Count I has a second, independent object; to knowingly and willfully make false statements in violation of 18 U.S.C. § 1001. Because the second object of the § 371 conspiracy is to violate a separate criminal statute, the Government argues that the court's ruling was erroneous, since it precludes the Government from presenting evidence as to this second object.[8]

■ We reject this argument. Section 371 explicitly covers conspiracies to defraud the United States *or* commit any offense against the United States. Section 1001 proscribes the substantive offense of falsifying or covering up material facts in any matter within the jurisdiction of any department or agency of the United States. A conspiracy to commit "any offense" against the United States (here a § 1001 offense) is as much a violation of § 371 as is a conspiracy to defraud the United States.

The Supreme Court in *Tanner* explained that the conspiracies criminalized by § 371 are defined by the target of the conspiracy. The holding in *Tanner* thus applies with equal force to the "any offense" clause of § 371 as it does to the "defraud" clause. Again, by specifically referring to county departments and agencies as the targets of the conspiracy, to the exclusion of departments or agencies of the United States, the overt acts section of the indictment precludes the Government from presenting evidence as to a § 371 conspiracy, no matter what its object. To permit the Government to do so would allow the possibility that the defendant could be convicted of an offense with which he had not been charged.

AFFIRMED.

## APPENDIX A

The Grand Jury charges that:

## COUNT I

*Economic Development Corporation
of Dade County*

1. At all times relevant to this indictment the Economic Development Corporation of Dade County, Inc. (hereinafter EDCO) was a non-profit corporation, registered in the State of Florida. From May, 1981 to October, 1982, EDCO was located at 1001 N.W. 54th Street, Miami, Florida. From November, 1982, until October, 1984, EDCO was located at 8270 Northeast Second Avenue, Miami, Florida. EDCO was organized to receive and distribute federal funds in the form of loans to minority owned businesses in Dade County, Florida.

2. At all times relevant to this indictment EDCO received federal funds from the United States Department of Housing

---

**7.** The Eleventh Circuit in *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir.1981), adopted as precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981.

**8.** We reject defendant's claim that Count I must be dismissed on independent grounds for duplicity, which is the joining of two or more separate crimes in a single count of an indictment. *United States v. Ramos*, 666 F.2d 469, 473 (11th Cir.1982). While it is true that courts have interpreted the "defraud the United States" and the "commit any offense" clauses of § 371 as separate criminal offenses, *see, e.g., United States v. Haga*, 821 F.2d 1036, 1039 (5th Cir.

1987), it is well established that a single conspiracy count may properly allege multiple objectives. *United States v. Alvarez*, 735 F.2d 461, 465 (11th Cir.1984). The Supreme Court stated in *Braverman v. United States*, 317 U.S. 49, 63 S.Ct. 99, 87 L.Ed. 23 (1942), that the allegation in a single count of a conspiracy to commit several crimes does not render the count duplicitous, for "[t]he conspiracy is the crime and that is one, however diverse its objects." *Id.* at 54, 63 S.Ct. at 102, 87 L.Ed. at 28–29 (citations omitted). Count I alleges a single conspiracy in violation of § 371, with two separate objects, and is not duplicitous.

and Urban Development. These federal funds were provided to Metropolitan Dade County Florida in the form of Community Development Block Grants. EDCO would and did request funds from the Dade County Office of Community and Economic Development (hereinafter OCED). These funds would be drawn down in order to provide loans to minority businesses.

3. At all time relevant to this indictment EDCO received additional federal funds from the United States Department of Commerce, Minority Business Development Agency. The purpose of these funds was to allow EDCO to provide management and technical assistance to minority owned businesses.

*The Defendants:*

4. At all times relevant to this indictment ALGA HOPE, JR., was employed as the President and Executive Director of EDCO, and was responsible for EDCO's overall operations.

5. From in or about May 1982, until on or about April 6, 1984, HILARIO JAMES, was employed by EDCO as a business analyst and finance specialist. His responsibilities included management and business assistance to EDCO's clients.

6. At all times relevant to this indictment ALGA HOPE, JR. and HILARIO JAMES were the principals of three corporations registered in the State of Florida: Sunbelt Recycled Rubber Industries, Inc., incorporated on or about May 11, 1983 and allegedly located at 17860 Southwest 111th Avenue, Miami, Florida; Sunbelt Recycled Rubber Collection Centers, Inc., incorporated on or about May 11, 1983 and allegedly located at 17860 Southwest 111th Avenue, Miami, Florida; and Sunbelt Recycled Rubber Products, Inc., incorporated on or about July 29, 1983, and allegedly located at 781 N.E. 75th Street, Miami, Florida. Sunbelt Recycled Rubber Collection Centers, Inc. was a subsidiary of Sunbelt Recycled Rubber Industries, Inc.

7. From in or about May 1983 to in or about August 1984, at Miami, Dade County, in the Southern District of Florida and elsewhere, the defendants,

ALGA HOPE, JR.

and

HILARIO JAMES,

did knowingly and willfully combine, conspire, confederate and agree with each other and with persons unknown to the Grand Jury:

(1) to defraud the United States of America, and the Department of Housing and Urban Development, an agency of the United States, by impairing, obstructing, and defeating the lawful governmental function of administration and enforcement of the community Development Block Grant Program by means of fraud, deceit and dishonesty; and

(2) to knowingly and willfully conceal, cover up and cause to be concealed and covered up, material facts, that is, the co-ownership by ALGA HOPE, JR. of Sunbelt Recycled Rubber Collection Centers, Inc., in a manner within the jurisdiction of an agency or department of the United States, that is, the Department of Housing and Urban Development, in violation of Title 18, United States Code, Section 1001.

*The Manner and Means of the Conspiracy:*

8. It was part of the conspiracy that HILARIO JAMES would and did resign from his position as business analyst and finance specialist with EDCO so that he could apply to EDCO for a federally funded loan for Sunbelt Recycled Rubber Collection Centers, Inc., the corporation that he co-owned, with ALGA HOPE, JR.

9. It was further part of the conspiracy that ALGA HOPE, JR., as the President of EDCO, voted in favor of the loan to Sunbelt Recycled Rubber Collection Centers, Inc. at the meeting of EDCO's loan committee without disclosing that he was a co-owner of the corporation.

10. It was further part of the conspiracy that ALGA HOPE, JR., without disclosing his co-ownership of Sunbelt Recycled Rubber Collection Centers, Inc., recommended to officials of Dade County OCED

that the loan to the corporation be approved and that federal funds be drawn down.

11. It was further part of the conspiracy that false and fraudulent documents were submitted to Dade County OCED in support of the loan application of Sunbelt Recycled Rubber Collection Centers, Inc. These false and fraudulent documents included a purchase agreement and sales receipts between Sunbelt Recycled Rubber Collection Centers, Inc. and TCM International, Inc.

## OVERT ACTS

In furtherance of the conspiracy and to effect the objects thereof, the following overt acts among others were committed by at least one of the defendants within the Southern District of Florida and elsewhere:

A. On or about March 20, 1984, HILARIO JAMES sent a letter to ALGA HOPE, JR., submitting his resignation from EDCO.

B. On or about March 20, 1984, HILARIO JAMES submitted an application to EDCO, requesting a federally funded loan in the amount of $85,000 for Sunbelt Recycled Rubber Collection Centers, Inc.

C. On or about March 30, 1984, ALGA HOPE, JR., submitted the loan application of Sunbelt Recycled Rubber Collection Centers, Inc. to an official of Dade County OCED.

D. On or about April 5, 1984, ALGA HOPE, JR., attended a meeting of the EDCO loan committee at which he voted in favor of the loan to Sunbelt Recycled Rubber Collection Centers, Inc.

E. On or about April 10, 1984, ALGA HOPE, JR., sent a letter to Dr. Ernest Martin, Director of Dade County OCED, recommending approval of the loan to Sunbelt Recycled Rubber Collection Centers, Inc.

F. On or about April 12, 1984, ALGA HOPE, JR., sent a letter to Dr. Ernest Martin, Director, Dade County OCED, responding to questions raised by OCED concerning the loan to Sunbelt Recycled Rubber Collection Centers, Inc.

G. On or about April 12, 1984, ALGA HOPE, JR., requested a draw down of $75,-000.00 in federal funds for the loan to Sunbelt Recycled Rubber Collection Centers, Inc.

H. On or about April 23, 1984, ALGA HOPE, JR., and HILARIO JAMES endorsed a check from Dade County, in the amount of $65,000.00, made out jointly to EDCO and to Sunbelt Recycled Rubber Collection Centers, Inc.

I. On or about April 26, 1984, ALGA HOPE, JR., HILARIO JAMES and an attorney attended a meeting at EDCO in which the loan to Sunbelt Recycled Rubber Collection Centers, Inc., was closed.

J. On or about April 27, 1984, ALGA HOPE, JR., signed an EDCO check in the amount of $73,750.25, payable to Sunbelt Recycled Rubber Collection Centers, Inc.

K. On or about May 4, 1984, HILARIO JAMES wrote a check from Tropical Federal Savings and Loan Association, account number 01 00043727, in the amount of $1,500.00, payable to HILARIO JAMES.

L. On or about June 11, 1984, HILARIO JAMES, wrote a check from Tropical Federal Savings and Loan Association, account number 01 00043277, in the amount of $1,000.00, payable to HILARIO JAMES. The check is annotated "L/P on behalf of Al Hope."

M. On or about June 18, 1984, HILARIO JAMES, wrote a check from Tropical Federal Savings and Loan Association, account number 01 00043277, in the amount of $500.00, payable to HILARIO JAMES. The stub for the check is annotated "loan payable—Al Hope."

N. On or about June 20, 1984, HILARIO JAMES, wrote a check from Tropical Federal Savings and Loan Association, account number 01 000433277, in the amount of $300.00, payable to HILARIO JAMES. The check is annotated "Loan Payable to Al Hope."

O. On or about July 2, 1984, HILARIO JAMES, wrote a check from Tropical Federal Savings and Loan Association, account number 01 00043277, in the amount of

$2,000.00, payable to Sunbelt Recycled Rubber Industries, Inc. and annotated "management fees."

P. On or about July 3, 1984, HILARIO JAMES, wrote a check from Tropical Federal Savings and Loan Association, account number 01 00043277, in the amount of $800.00, payable to HILARIO JAMES. The check is annotated "Hilario James Al Hope."

Q. On or about August 4, 1984, ALGA HOPE, JR. and HILARIO JAMES, meet with a consultant in Los Angeles, California to discuss a report prepared for Sunbelt Recycled Rubber Industries, Inc.

All in violation of Title 18, United States Code, Section 371.