**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Larry GIBSON, d/b/a Reid & Gibson Texaco, Defendant–Appellant.**

**No. 88–5944.**

United States Court of Appeals, Sixth Circuit.

Argued March 30, 1989.

Decided Aug. 1, 1989.

Joseph M. Whittle, U.S. Atty., Terry Cushing, argued, David Grise, Asst. U.S. Atty., Louisville, Ky., for plaintiff-appellee.

Scott T. Wendelsdorf, argued, Ogden & Robertson, Louisville, Ky., for defendant-appellant.

Before: MERRITT and NELSON, Circuit Judges, and LIVELY, Senior Circuit Judge.

DAVID A. NELSON, Circuit Judge.

Defendant Larry Gibson appeals from a conviction for conspiracy, in violation of 18 U.S.C. § 371, to violate 18 U.S.C. § 1001 by making a false statement in a matter within the jurisdiction of a federal agency. Citing *Tanner v. United States*, 483 U.S. 107, 107 S.Ct. 2739, 97 L.Ed.2d 90 (1987), the defendant argues that his conviction must be reversed because the United States was not the "target" of the conspiracy to make a false statement. He also argues that the false statement was not made in a matter within the jurisdiction of a federal agency, and he maintains that the statute requires the government to charge and prove the defendant's knowledge of federal involvement. We disagree, and we shall affirm the conviction.

## I

Mr. Gibson and his business partner, John Reid, owned Reid & Gibson Texaco, a gas station in Morganfield, Kentucky. The Tennessee Valley Authority, an agency of the United States government, owned nearby land that the Peabody Coal Company mined for coal under a cost-plus contract. Reid & Gibson Texaco sold tires to Peabody for use on trailer-trucks used in the mining operation. There was no direct contract between Reid & Gibson Texaco and TVA, but the invoices submitted to Peabody did use purchase order numbers assigned by TVA.

TVA's contract with Peabody required Peabody to submit to TVA audits, required that Peabody's subcontractors agree to obey certain federal laws and regulations, and required advance TVA approval for any Peabody subcontacts exceeding $100,-000. At TVA's instance, Reid & Gibson Texaco was required to sign a document agreeing to comply with a three page litany of federal requirements and to "file reports with the TVA Contracting Officer" if requested. The document was designated as an "addendum" to Peabody's purchase orders and was signed by Mr. Gibson's business partner, John Reid, on behalf of Reid & Gibson Texaco. It clearly identified Peabody as a TVA contractor and specifically called attention to the prohibition in 18 U.S.C. § 1001 against making false statements in matters within the jurisdiction of a government agency.

At trial there was evidence that Reid and Gibson overcharged Peabody by at least $120,000 over a two and one-half year period. They charged Peabody for tires that were never delivered, inflated charges on invoices, and got Peabody employees to sign authorizations for charges in blank. Peabody employees received free tires, car washes, and other services from the gas station, and a few employees received such big-ticket items as a stove, a refrigerator, and a VCR. The total cost of the goods

and services thus provided Peabody people was about $67,000. Peabody employees rarely, if ever, checked to see that the tires for which they were submitting charges to TVA were actually delivered to Peabody.

Messrs. Reid and Gibson were indicted by a federal grand jury on a charge of conspiracy to defraud the United States and commit an offense against the United States, *i.e.*, to make false statements in a matter within the jurisdiction of a federal agency. Mr. Reid pleaded guilty. Mr. Gibson's case was tried to a jury. At the close of the government's case, Mr. Gibson moved for a judgment of acquittal pursuant to Fed.R.Crim.P. 29. Citing *Tanner*, 483 U.S. 107, 107 S.Ct. 2739, the district court granted the motion with respect to the language in the indictment charging conspiracy to defraud the United States. The motion was denied as to the language charging conspiracy to violate 18 U.S.C. § 1001. Mr. Gibson was convicted, sentenced to three years in prison, and ordered to pay restitution of about $62,000. This appeal followed.

## II

■ 18 U.S.C. § 371 provides in pertinent part:

"If two or more persons conspire *either* to commit any offense against the United States, *or* to defraud the United States, or any agency thereof in any manner or for any purpose, and one or more of such persons do any act to effect the object of the conspiracy, each shall be fined not more than $10,000 or imprisoned not more than five years, or both." (Emphasis added.)

The indictment in this case charged one conspiracy with two objects: to defraud the United States and to commit an offense against the United States. The district court granted the defendant's motion for judgment of acquittal on the charge of conspiring to defraud the United States, relying on *Tanner, supra.*[1] On appeal, Mr.

---

1. We recently held that "conspiracies to commit specific offenses (which are also arguably general frauds)" must be prosecuted "exclusively under the offense clause of § 371...." *United*
States v. Minarik, 875 F.2d 1186, 1194 (6th Cir. 1989). The district court's decision not to allow the government's case to proceed on the "defraud" clause of § 371 was thus correct for a

Gibson argues that *Tanner* requires acquittal on the charge of conspiracy to commit an offense against the United States as well.

*Tanner* defines the class of conspiracies that may be prosecuted as conspiracies to defraud the United States. Citing cases interpreting the word "defraud" as used in other federal criminal statutes, the Court held that only conspiracies of which the United States is the "target" are conspiracies "to defraud the United States" within the meaning of § 371. 483 U.S. at 130, 107 S.Ct. at 2752–53. It was unclear to the *Tanner* Court whether the target of the conspiracy involved in that case was a private business or the United States, so the Court remanded the case with instructions to make such a determination. 483 U.S. at 132, 107 S.Ct. at 2753–54. The Court noted that a conspiracy could be directed at the United States as a target and yet be effected through a third-party such as a private business. *Id.*

*Tanner* does not discuss the second class of conspiracies criminalized by § 371, conspiracies "to commit any offense against the United States." It has long been established that the words "offense against the United States" encompass all offenses against the laws of the United States, not just offenses directed at the United States as target or victim. *Thomas v. United States,* 156 F. 897 (8th Cir.1907); *Radin v. United States,* 189 F. 568 (2d Cir.1911). The precursor of § 371, the Act of March 2, 1867, ch. 169, § 30, 14 Stat. 471, 484, expressly prohibited conspiracies "to commit any offense against the laws of the United States." The words "the laws of" were deleted as superfluous in 1873 by a revision commission that had no authority to make substantive changes in the law. *Thomas,* 156 F. at 899. The federal conspiracy statute's prohibition against conspiracies to commit any offense against the United States has historically been interpreted "as a broad and comprehensive provision denouncing conspiracies to commit offenses created by *any* of the statutes of the Unit-

ed States." *Id.* at 901 (emphasis supplied). We do not believe the *Tanner* decision was intended to redefine the words "offense against the United States."

In *United States v. Feola,* 420 U.S. 671, 95 S.Ct. 1255, 43 L.Ed.2d 541 (1975), the Supreme Court held "that where knowledge of the facts giving rise to federal jurisdiction is not necessary for conviction of a substantive offense ... such knowledge is equally irrelevant to questions of responsibility for conspiracy to commit that offense." 420 U.S. at 696, 95 S.Ct. at 1269. As we shall see in the next section of this opinion, knowledge of the facts giving rise to federal jurisdiction is not necessary for conviction of violating § 1001. *Tanner* did not purport to upset *Feola,* and if, as *Feola* suggests, the prosecution need not prove for § 1001 purposes that the defendant had knowledge of federal involvement, it is difficult to see how the prosecution can be required to prove that the government was the intended "target" of the conspiracy.

We recognize that our resolution of this issue differs from that of the Court of Appeals for the Eleventh Circuit in *United States v. Hope,* 861 F.2d 1574 (11th Cir. 1988). Like the defendants in the present case, the defendants in *Hope* had been charged in a one-count indictment with conspiracy to do two things: defraud the United States and violate 18 U.S.C. § 1001. Without extensive discussion, the court held that the language charging conspiracy to violate § 1001 failed to state an offense because it failed to charge that the United States was the "target" of that conspiracy. We think this question should be decided the other way.

### III

Mr. Gibson also argues that what he was allegedly conspiring to do did not violate § 1001, and thus could not rise to the dignity of an offense against the United States. 18 U.S.C. § 1001 provides, in pertinent part:

second reason. *Minarik* poses no obstacle to our affirmance of the conviction for violating

the "offense" clause.

"Whoever, in any matter within the jurisdiction of any department or agency of the United States knowingly and willfully ... makes any false, fictitious or fraudulent statements or representations, or makes or uses any false writing or document knowing the same to contain any false, fictitious or fraudulent statement or entry, shall be fined not more than $10,000 or imprisoned not more than five years, or both."

Mr. Gibson argues that his statements were not made "in any matter within the jurisdiction of any department or agency of the United States", and that in any event the government should have been required to charge and prove that the defendant knew of the existence of "the jurisdiction of any department or agency of the United States." We examine these arguments in turn.

## A

The Supreme Court has repeatedly held that "the term 'jurisdiction' should not be given a narrow or technical meaning for the purposes of § 1001." *Bryson v. United States*, 396 U.S. 64, 70, 90 S.Ct. 355, 359, 24 L.Ed.2d 264 (1969); see also *United States v. Rodgers*, 466 U.S. 475, 479–82, 104 S.Ct. 1942, 1945–48, 80 L.Ed.2d 492 (1984) and *United States v. Gilliland*, 312 U.S. 86, 93, 61 S.Ct. 518, 522, 85 L.Ed. 598 (1941). Rather,

> "[a] department or agency has jurisdiction, in this sense, when it has the power to exercise authority in a particular situation.... Understood in this way, the phrase 'within the jurisdiction' merely differentiates the official, authorized functions of an agency or department from matters peripheral to the business of that body." *Rodgers*, 466 U.S. at 479, 104 S.Ct. at 1946.

Federal departments and agencies have "the power to exercise authority" in a great many matters not completely controlled by those departments or agencies. So long as the statements are material, see *United States v. Abadi*, 706 F.2d 178 (6th Cir.), *cert. denied*, 464 U.S. 821, 104 S.Ct. 86, 78 L.Ed.2d 95 (1983), false statements made in any such matter are within the scope of § 1001. There is no implicit requirement that the statements be made directly to, or even be received by, the federal department or agency. Courts have routinely upheld § 1001 convictions for false statements made to state or local government agencies receiving federal support or subject to federal regulation. See, *e.g., United States v. Lewis*, 587 F.2d 854, 857 (6th Cir.1978) (per curiam) (false statements to state welfare agency receiving federal funds); *United States v. Petullo*, 709 F.2d 1178, 1180–81 (7th Cir.1983) (false invoices submitted to city administering federal disaster relief funds); *United States v. Stanford*, 589 F.2d 285, 296–98 (7th Cir.1978) (false statements to state welfare agency receiving federal funds), *cert. denied*, 440 U.S. 983, 99 S.Ct. 1794, 60 L.Ed.2d 244 (1979); *United States v. Lawson*, 809 F.2d 1514, 1518 (11th Cir.1987) (false statements to local housing authority acting as agent for HUD).

Courts have also affirmed § 1001 convictions for false statements made to private entities receiving federal funds or subject to federal regulation or supervision. See, *e.g., United States v. Kirby*, 587 F.2d 876, 881 (7th Cir.1978) (false inspection and weight certificates submitted to private grain purchaser in transaction subject to regulation by Department of Agriculture); *United States v. Dick*, 744 F.2d 546, 554 (7th Cir.1984) (false statements to surety insured by Small Business Administration); *United States v. Brack*, 747 F.2d 1142, 1150–52 (7th Cir.1984) (false statements to surety insured by Small Business Administration), *cert. denied*, 469 U.S. 1216, 105 S.Ct. 1193, 84 L.Ed.2d 339 (1985); *United States v. Green*, 745 F.2d 1205, 1208–09 (9th Cir.1984) (false statements to private firm constructing nuclear power plant regulated by Nuclear Regulatory Commission), *cert. denied*, 474 U.S. 925, 106 S.Ct. 259, 88 L.Ed.2d 266 (1985); *United States v. Wolf*, 645 F.2d 23, 25–26 (10th Cir.1981) (false statements to oil company subject to federal regulation); *United States v. Matanky*, 482 F.2d 1319, 1322 (9th Cir.) (false statements to insurance company acting as payment agent for Medicare), *cert. denied*,

414 U.S. 1039, 94 S.Ct. 539, 38 L.Ed.2d 329 (1973); *United States v. Mouton*, 657 F.2d 736, 739 (5th Cir. Unit A Sept. 1981) (false time sheet submitted to accounting office of community organization receiving CETA funds); *United States v. Cartwright*, 632 F.2d 1290, 1292–93 (5th Cir. Unit A 1980) (false statements to savings and loan association insured by FSLIC).

■■■ We have little difficulty concluding that TVA had "jurisdiction," for purposes of § 1001, to investigate and prevent fraud in the performance of its contracts. Protecting itself against being wrongfully overcharged is clearly an "official, authorized function[ ]" of TVA, not a "matter[ ] peripheral to the business of that body." *Rodgers*, 466 U.S. at 479, 104 S.Ct. at 1946. As "false statements [that] would result in the perversion of the authorized functions of a federal department or agency," *Stanford*, 589 F.2d at 297, the statements charged in the indictment constituted a violation of § 1001.

The principal case relied on by Mr. Gibson, *Lowe v. United States*, 141 F.2d 1005 (5th Cir.1944), is not controlling. *Lowe* has no application if, as here, the private entity to which the false statement is made is required to make regular reports to a government agency and the agency retains ultimate authority to see that federal funds are properly spent. *United States v. Baker*, 626 F.2d 512, 515 n. 6 (5th Cir.1980).

## B

■■■ Mr. Gibson argues, finally, that even if his misstatements were "within the jurisdiction" of TVA, the government should have been required to prove that he *knew* of the agency's jurisdiction. We held in *Lewis*, 587 F.2d at 857, that "knowledge

of federal involvement is not an element of the offense," and we "decline[d] to write any such requirement into the Act." The Supreme Court subsequently held in *United States v. Yermian*, 468 U.S. 63, 104 S.Ct. 2936, 82 L.Ed.2d 53 (1984), that § 1001 contains no requirement that the defendant have actual knowledge of federal involvement.[2] The court did not decide whether the statute imposes some sort of constructive knowledge requirement, 468 U.S. at 75 n. 14, 104 S.Ct. at 2942 n. 14, but the Court stressed that the defendant in *Yermian* was not being subjected to criminal penalties on the basis of "innocent" conduct. (Mr. Gibson's conduct in the case at bar was not exactly "innocent" either, of course.)

The Supreme Court granted certiorari in *Yermian* to resolve a conflict between the Ninth Circuit's decision in that case and, among others, this court's decision in *Lewis*. 468 U.S. at 68, 104 S.Ct. at 2939. The Supreme Court decided to reverse the decision of the Ninth Circuit, and *Lewis* remains good law. Unless and until *Yermian* is overruled by the Supreme Court or *Lewis* is repudiated by this court sitting *en banc*, we feel contrained to continue applying *Lewis* and *Yermian* to cases where they are in point. The conviction of Mr. Gibson is

AFFIRMED.

MERRITT, Circuit Judge, dissenting.

I believe that the Supreme Court will adopt Chief Justice Rehnquist's dissenting opinion in *United States v. Yermian*, 468 U.S. 63, 75, 104 S.Ct. 2936, 2942–43, 82 L.Ed.2d 53 (1984), when again confronted with the question of the defendant's intent on the jurisdictional element in a § 1001 case. In *Yermian*, the Chief Justice, writ-

---

**2.** There was a strong dissent in *Yermian*, and the chord struck in the dissent is not out of harmony with themes sounded in subsequent majority opinions, including *Tanner*. It implies no disrespect to say that *Yermian* is not as firmly entrenched in our jurisprudence as *McCulloch v. Maryland*, say, or *Brown v. Board of Education*, and it is entirely possible that the Supreme Court will revisit *Yermian* at some point and decide to overrule it. But it is not the prerogative of a court of appeals to anticipate

the demise of directly applicable Supreme Court precedent. "If a precedent of [the Supreme] Court has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, the Court of Appeals should follow the case which directly controls, leaving to the [the Supreme] Court the prerogative of overruling its own decisions." *Rodriguez de Quijas v. Shearson/American Express, Inc.*, 490 U.S. ——, ——, 109 S.Ct. 1917, 1921–22, 104 L.Ed.2d 526 (1989).

ing for himself and Justices Brennan, Stevens and O'Connor, said that knowledge of the jurisdictional element in § 1001 prosecutions is required:

> I therefore think that the canon of statutory construction which requires that "ambiguity concerning the ambit of criminal statutes ... be resolved in favor of lenity," is applicable here. Accordingly, I would affirm the Court of Appeals' conclusion that actual knowledge of federal involvement is a necessary element for conviction under § 1001....
>
> Instead the court suggests that some lesser state of mind may well be required in § 1001 prosecutions in order to prevent the statute from becoming a "trap for the unwary"....
>
> I think that the Court's opinion will engender more confusion than it will resolve with respect to the culpability requirement in § 1001 cases not before the Court....
>
> If the proper standard is something other than "actual knowledge" or "reasonable foreseeability," then respondent is entitled to a new trial and a proper instruction under that standard.

468 U.S. at 77 and 83, 104 S.Ct. at 2944 and 2946–47 [citations omitted].

We are faced with the same situation as the Court in *Yermian.* The District Court, and now our Court, have held that no element of knowledge, foreseeability or culpability is required concerning TVA's involvement with Peabody. The District Court declined to give an instruction requiring actual knowledge or reasonable foreseeability or any other element of culpability regarding this element, and we have approved. Under such an interpretation even the person who supplied the gas or tires to the defendant, and who knew that the defendant was defrauding Peabody, would be criminally liable under § 1001, even though the supplier had no knowledge of TVA's involvement. The government should be required to prove knowledge of this element of the crime, and the jury should be required through proper instructions to focus its attention on the defendant's knowledge that TVA was the victim of the fraud.

I am reinforced in my view that the Supreme Court will reverse its position by two more recent Supreme Court cases. In *Liparota v. United States,* 471 U.S. 419, 105 S.Ct. 2084, 85 L.Ed.2d 434 (1985), the Court said:

> With respect to this element [knowledge of federal agency jurisdiction], although the [*Yermian*] Court held that the Government did not have to prove actual knowledge of federal agency jurisdiction, the Court explicitly reserved the question whether *some* culpability was necessary with respect even to the jurisdictional element. 468 U.S. at 75 n. 14 [104 S.Ct. at 2943 n. 14].

471 U.S. at 432, 105 S.Ct. at 2092.

In *Tanner v. United States,* 483 U.S. 107, 107 S.Ct. 2739, 97 L.Ed.2d 90 (1987), the Court held that, in a prosecution for conspiracy to defraud the government under 18 U.S.C. § 371, the government must be the known "target" of the fraud and that defrauding a third party recipient of funds is not equivalent to defrauding the government. The *Tanner* case, although distinguishable because the language of § 371 concerning the federal element differs from the language of § 1001, indicates that in federal fraud cases, the Supreme Court is no longer willing to excuse the prosecution from proving knowledge of the government's involvement.

I recognize that it is often hazardous for lower federal courts to predict that the Supreme Court will reverse a 5–4 opinion, but such a prediction does not require much of a leap of faith in this case. Chief Justice Rehnquist's prediction of significant confusion in the lower courts has come to pass. After *Yermian,* the Supreme Court has reiterated in *Liparota* its reservations with respect to the knowledge requirement of the jurisdictional element, and in *Tanner* it has held that the government must be the known target in § 371 fraud-against-the-government cases. The five justice majority in *Yermian* is no longer intact since two members of the majority are no longer on the Court, but the four dissenting members of the Court remain. Therefore, I do not think *Yermian* is still

good law and would reverse Gibson's conviction.