RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
File Name: 11a0094p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

UNITED STATES OF AMERICA,
                              *Plaintiff-Appellee,*

            *v.*

JOHN FORD,
                              *Defendant-Appellant.*

No. 08-6169

_____

Appeal from the United States District Court
for the Middle District of Tennessee at Nashville.
No. 06-00235-001—Todd J. Campbell, Chief District Judge.

Argued: March 9, 2011

Decided and Filed: April 14, 2011

Before: KEITH, MERRITT, and MARTIN, Circuit Judges.

_____

**COUNSEL**

**ARGUED:** Paul Mogin, WILLIAMS & CONNOLLY LLP, Washington, D.C., for Appellant. Matthew J. Everitt, ASSISTANT UNITED STATES ATTORNEY, Nashville, Tennessee, for Appellee. **ON BRIEF:** Paul Mogin, William E. McDaniels, M. Jesse Carlson, WILLIAMS & CONNOLLY LLP, Washington, D.C., for Appellant. Matthew J. Everitt, David Rivera, Addison B. Thompson, ASSISTANT UNITED STATES ATTORNEYS, Nashville, Tennessee, for Appellee.

_____

**OPINION**

_____

        BOYCE F. MARTIN, JR., Circuit Judge. Defendant-appellant John Ford appeals his conviction from United States District Court for the Middle District of Tennessee on four counts of concealing material facts regarding a matter within federal jurisdiction, in violation of 18 U.S.C. § 1001, and two counts of honest services wire fraud, in

1

violation of 18 U.S.C. §§ 1343, 1346.  Although Ford raises many issues on appeal, this case boils down to only two: (1) whether his section 1001 violations should be vacated because the facts he concealed did not concern a matter within federal jurisdiction; and (2) whether his wire fraud convictions should be vacated in light of the Supreme Court's recent decision in *Skilling v. United States*, 130 S. Ct. 2896, 2907 (2010).  We hereby **VACATE** Ford's convictions.  The judgment of the district court is **REVERSED**.

## I.  BACKGROUND

Ford is a former Tennessee State Senator from Memphis who held his seat for more than thirty years.  The United States has twice now prosecuted Ford for actions related to his elected position.  The first prosecution resulted in his conviction for bribery relating to his role with a fictitious, FBI-created business called E-Cycle.  For that charge, his sentence was five and a half years of imprisonment, which he is separately appealing.  The second led to this current appeal.

The charges in Ford's second prosecution involve his failure to disclose his financial interests in certain organizations working with TennCare, a Tennessee state organization that provides healthcare to Tennessee citizens not covered by Medicaid. TennCare exists as a result of a waiver from the United States Department of Health and Human Services, which oversees Medicaid.  Normally, TennCare provides medical services to its members by contracting with one or a small number of healthcare providers.  In 2002, TennCare decided to carve out dental services from its normal network of providers and contract with a single provider.  As part of his duties as state senator, Ford had a position on the TennCare oversight committee, which discussed and recommended changes to TennCare.  The executive branch made all final decisions.

Ford had a busy work schedule.  Not only did he serve as a senator, but he worked in his family's mortuary business and as an insurance agent.  He also worked as a consultant, which is more relevant to this case.  He worked as a consultant individually for United American Healthcare Corporation, which owned a subsidiary business called Omnicare.  Omnicare gave him an initial payment of $17,000 and monthly payments of

$8,500 for regular consultation regarding business outside of Tennessee. Omnicare raised the monthly payment to $10,000 in early 2004. TennCare contracted with Omnicare as a managed care organization to provide healthcare to TennCare members. Additionally, Ford owned forty percent of a consulting partnership called Managed Care Services Group, which provided consulting services to Doral Dental Services of Tennessee. The other partners were Ronald Dobbins, former chief executive officer of United; and Osbie Howard, chief executive officer of Omnicare. Doral agreed to pay Managed Care two cents per month per TennCare member if it won the contract for the TennCare dental carve out. Doral won the contract, after which it increased its payment to Managed Care to three cents per month per TennCare member, which approximated to $40,000 per month. Ford did not disclose his consulting business endeavors until 2005 even though he was required to do so with the Tennessee Senate and the Tennessee Registry of Election Finance.

At trial, a jury convicted Ford of two counts of "honest services" wire fraud and four counts of concealing a material fact regarding a matter within the jurisdiction of the executive branch of the United States for failing to disclose his relationships with Omnicare and Doral to the Tennessee Senate and Tennessee Registry of Election Finance.

## II.  DISCUSSION

### A.    Section 1001 Convictions

A jury found Ford guilty of violating section 1001 because he did not disclose his financial relationships with Omnicare and Doral. Ford asserts that his section 1001 convictions should be vacated essentially because that statute does not apply to his actions. We review matters of statutory interpretation de novo. *United States v. Holmes*, 111 F.3d 463, 465 (6th Cir. 1997).

Section 1001 prohibits anyone from knowingly and willfully falsifying, concealing, or covering up by any trick, scheme, or device a material fact "in any matter within the jurisdiction of the executive, legislative, or judicial branch of the Government

of the United States." 18 U.S.C. § 1001(a)(2). "[T]he term jurisdiction should not be given a narrow or technical meaning for the purposes of § 1001." *United States v. Gibson*, 881 F.2d 318, 322 (6th Cir. 1989) (quoting *Bryson v. United States*, 396 U.S. 64, 70 (1969)) (internal quotation marks omitted). The federal government has jurisdiction "when it has the power to exercise authority in a particular situation." *Id.* (quoting *United States v. Rodgers*, 466 U.S. 475, 479 (1984)) (internal quotation marks omitted). Jurisdiction may exist when "false statements [were] made to state or local government agencies receiving federal support or subject to federal regulation." *Id.* (citations omitted).

### i.     Whether Ford's Actions Violated Section 1001

Ford argues that section 1001 does not apply to his actions because the disclosure duties that he breached were owed only to state entities outside of federal jurisdiction. He makes an important distinction between the subject matter of his non-disclosures and the entities to which he owed disclosure duties. Ford all but concedes that the subject matter of his non-disclosures—his financial interests related to TennCare—was federal. Indeed, TennCare is paid for mostly with federal funding and exists only because of a federal waiver from federal Medicaid. However, the disclosures that Ford was supposed to make were owed to state entities—the Tennessee Senate and Tennessee Registry of Election Finance. Herein lies the distinction central to Ford's argument. While the facts that he failed to disclose concerned an entity inseparable from federal ties, the entities to which he failed to disclose those facts were anything but federal.

Ford's distinction has merit. In *Holmes*, 111 F.3d at 465, the defendant was charged pursuant to section 1001 for filing false unemployment claims with the Michigan Employment Security Commission. However, this Court held that the false statements did not fall within federal jurisdiction because "the federal government neither fund[ed] the fraudulently obtained state benefit payments, nor ha[d] any authority to act upon discovering that the state program ha[d] been defrauded." *Id.* at 466. The Court also favorably quoted a similar Ninth Circuit case: "To establish jurisdiction, the information received must be directly related to an authorized function of the federal

agency. Otherwise, the scope of section 1001 jurisdiction would be virtually limitless." *Id.* (quoting *United States v. Facchini*, 874 F.2d 638, 642 (9th Cir. 1989) (en banc)) (internal quotation marks omitted).

Here, Ford's failures to disclose financial interests were related to functions of the state government of Tennessee—the senate's and election registry's reporting requirements. The senate and election registry likely could have exercised authority in this situation. *Cf. Gibson*, 881 F.2d at 322. They could have reprimanded Ford or exacted some equitable remedy, but no federal entity had similar authority in this situation. Furthermore, the United States presented no evidence that the senate or election registry operate on federal funds.

Ford's distinction is also persuasive in light of this Court's opinion in *Gibson*. There, Peabody Coal contracted with the Tennessee Valley Authority, a federal agency, to mine coal on the Authority's land. *Gibson*, 881 F.2d at 320. The defendant contracted with Peabody to sell tires to Peabody's operation on the Authority's land. *Id.* In connection with the contract, the defendant signed an agreement to file reports with the Authority if requested. *Id.* The agreement also listed the Authority as Peabody's contractor and detailed the applicability of section 1001 to the defendant. *Id.* Thereafter, the defendant submitted false invoices to Peabody for which the defendant was convicted pursuant to section 1001. *Id.* On appeal, this Court affirmed the conviction and held that section 1001 applied. *Id.* at 322-23. The Authority "had jurisdiction, for purposes of § 1001, to investigate and prevent fraud in the performance of its contracts." *Id.* (quoting *Rodgers*, 466 U.S. at 479) (internal quotation marks omitted).

In *Gibson*, the defendant made false statements to Peabody, but he was contractually connected to the federal government because of his contract with Peabody and Peabody's relationship with the Authority. Here, on the other hand, Ford was not contractually connected to the federal government and he only owed reporting duties to the senate and election registry. Those entities are not controlled by the federal government. Ford only breached disclosure duties owed to entities controlled, funded,

and administered by the State of Tennessee. There is no controlling authority, from the Supreme Court or otherwise, to support the proposition that a state official is liable under section 1001 for the violation of a state law duty to disclose. Thus, section 1001 does not apply to Ford's non-disclosures.

Furthermore, we find additional support for Ford's position in the Rule of Lenity, which instructs us to resolve "ambiguit[ies] concerning the ambit of criminal statutes . . . in favor of lenity." *Skilling*, 130 S. Ct. at 2932 (quoting *Cleveland v. United States*, 531 U.S. 12, 25 (2000)). Pursuant to the language of section 1001(a)(2), the falsehood or non-disclosure must be as to "any matter within the jurisdiction" of the federal government. The meaning of "any matter" and "jurisdiction" requires interpretation of unspecific words at an extremely high level of abstraction. Should a state conflict of interest as to a "matter" within the state's "jurisdiction" also come within federal "jurisdiction" anytime the state government is assisting the federal government as to some objective, whether it be health care, law enforcement, highways, etc.? The statute would cover lies made to federal government agents. But it is completely unclear whether the federal statute covers a failure to disclose to a federal agency a simple conflict of interest by a state public official that results in the state official's receipt of federal funds through multiple state and private intermediaries. If the defendant is not a state official but a Medicaid patient who lies to a doctor to get drugs that, in the end, Medicaid reimburses the cost of, is this lie a matter covered by the statute? Or if a patient should give his doctor false information that results in a medical test or procedure, the cost of which is reimbursed by Medicare, is the patient guilty of a section 1001 violation? The ambiguities of the language of section 1001 fit squarely within the Rule of Lenity, and we resolve them in favor of Ford. *See Skilling*, 130 S. Ct. at 2932 (invoking the Rule of Lenity to the ambiguity in the "honest services" statute, 18 U.S.C. § 1346); *see also United States v. Santos*, 553 U.S. 507, 514 (2008) (same result based on the Rule of Lenity in the money laundering statute).

Accordingly, we vacate Ford's convictions for violating section 1001 because his non-disclosures were not matters of federal jurisdiction.

###### ii.     Reporting Duties Owed by Ford

The indictment specifically alleged that Ford owed duties to the Tennessee Senate and the Tennessee Registry of Election Finance to disclose his financial interests in Omnicare and Doral.  At oral argument, the United States argued for the first time that Ford also owed a contractual duty to disclose his financial interests to TennCare as a result of his status as a subcontractor of Omnicare.  Omnicare was a subcontractor of TennCare and owed TennCare a contractual duty to not pay a Tennessee state officer for services or allow Tennessee state officers to benefit from the contract.  The United States imputes this contractual obligation owed by Omnicare to Ford, and likens this situation to the one presented to this Court in *Gibson*.

We find *Gibson* distinguishable in this context.  There, the defendant owed a duty to Peabody, which was directly contracted with a federal agency.  Furthermore, the agreement between the defendant and Peabody referenced the federal agency and explained how section 1001 was applicable to the defendant.  In contrast, here, Ford did not owe a duty to an entity directly contracted with a federal agency.  There was an intermediary—Omnicare—separating Ford from TennCare.  Additionally, and importantly, the indictment did not allege that the agreement between Omnicare and Ford referenced a federal agency or section 1001.  Although Omnicare had a contractual duty to not pay Tennessee officials and to prevent benefits from flowing to them, Ford was not bound by that duty.  Therefore, Ford did not owe TennCare a contractual duty to report his financial interests with Omnicare.  The only reporting duties owed by Ford in this case were owed to the senate and election registry.

### B.     The Effect of *Skilling* on Ford's Honest Services Convictions

Ford argues that his honest services wire fraud convictions should be vacated in light of the holding in *Skilling*.  The United States concedes that Ford's two wire fraud counts should be vacated in light of this recent ruling.  The *Skilling* Court held that the honest services statute, section 1346, "covers only bribery and kickback schemes." *Skilling*, 130 S. Ct. at 2907.  Ford's wire fraud convictions, however, were based upon

his failure to disclose his financial interests, not bribes or kickbacks.  Therefore, we vacate his wire fraud convictions.

### III.  CONCLUSION

We hereby **VACATE** Ford's convictions.  The judgment of the district court is **REVERSED**.