UNITED STATES of America,
Plaintiff–Appellee,

v.

David L. SHAFER, Defendant–
Appellant.

No. 98–1955.

United States Court of Appeals,
Sixth Circuit.

Argued: Oct. 28, 1999

Decided and Filed: Dec. 22, 1999

Julie Ann Woods, Assistant U.S. Attorney (argued and briefed), Grand Rapids, Michigan, for Plaintiff–Appellee.

Curtis J. Bell (argued), Gary C. Giguere, Jr. (briefed), Bell & Ankley, Kalamazoo, Michigan, for Defendant–Appellant.

Before: WELLFORD, MOORE, and GILMAN, Circuit Judges.

MOORE, J., delivered the opinion of the court, in which GILMAN, J., joined. WELLFORD, J. (pp. 832–33), delivered a separate concurring opinion.

## OPINION

MOORE, Circuit Judge.

David Shafer appeals his conviction and sentence for making false statements that pertain to a matter within the jurisdiction of a federal agency in violation of 18 U.S.C. § 1001. Shafer argues that his conviction should be overturned because the false statements in this case were made to a state agency and therefore did not pertain to a matter within the jurisdiction of a federal agency. Shafer also argues that the district court improperly determined that his failure to pay overtime wages in violation of the Fair Labor Standards Act ("FLSA") was "relevant conduct" when it included these unpaid overtime wages in its sentencing calculation. For the reasons set forth below, we **AFFIRM** the conviction, but **VACATE** Shafer's sentence and **REMAND** the case to the district court for resentencing consistent with this opinion.

## I. BACKGROUND

David Shafer was the owner and president of APEC, Ltd., a company that had contracted with the Michigan Department of Military Affairs to remove underground storage tanks and contaminated soil at several national guard armories located in Michigan. The contract required Shafer to pay the workers on the project a prevailing wage pursuant to the Davis–Bacon Act, 40 U.S.C. § 276a, and it required Shafer to send the Michigan Department of Military Affairs a payroll certification statement that listed the wages that his company had paid its workers. Between December 4, 1992 and January 8, 1993, Shafer sent several payroll certification statements to the Michigan Department of Military Affairs that verified that his company had paid its workers the prevailing wage.

In December of 1992, the United States Department of Labor began to investigate Shafer after it received a complaint that Shafer was not paying his workers the

prevailing wage. Shafer was eventually indicted by a federal grand jury on charges that he made false statements in a matter within the jurisdiction of a federal agency in violation of 18 U.S.C. § 1001. On April 21, 1998, after a two-day trial, the jury convicted Shafer of the charges. He was sentenced to twenty-four months of incarceration and a three-year period of supervised release, and he was required to pay a $24,000 fine, restitution of $25,000, and $800 in special assessments.

Shafer's sentence was based on a total loss figure of $140,363.49. The district court calculated this figure by adding the wages that the workers would have received had Shafer complied with the Davis–Bacon Act to the amount of overtime that Shafer should have paid his workers for their work on non-government contracts. In 1991, the Department of Labor investigated Shafer and discovered that he had failed to pay his workers $28,-784.27 in overtime wages for their work on non-government projects in violation of the FLSA, 29 U.S.C. § 207(a)(1). Since the 1991 investigation, the Department of Labor has determined that Shafer has failed to pay an additional $57,912.57 in overtime wages. The district court concluded that the total amount of unpaid overtime wages for work on non-government projects was "relevant conduct" and should be included in Shafer's base offense level pursuant to U.S.S.G. § 1B1.3(a)(2) (1997). The total loss figure increased Shafer's base offense level an additional seven levels. Shafer now appeals the conviction and the district court's inclusion of the unpaid overtime wages in his sentence.

## II. ANALYSIS

### A. False Statements in Violation of 18 U.S.C. § 1001

Shafer argues that there is insufficient evidence to sustain his conviction under 18 U.S.C. § 1001 because the false statements in this case were made to a state agency and therefore did not pertain to a matter within the jurisdiction of a federal agency. The primary question in this case whether the false statements were made in a matter that is within the jurisdiction of a federal agency—is a question of law that we review de novo. *United States v. Lawson*, 809 F.2d 1514, 1517 (11th Cir.1987); *United States v. Plascencia–Orozco*, 768 F.2d 1074, 1075–76 (9th Cir.1985).

18 U.S.C. § 1001 provides that:

[w]hoever, in any matter within the jurisdiction of any department or agency of the United States knowingly and willfully falsifies, conceals or covers up by any trick, scheme, or device a material fact, or makes any false, fictitious or fraudulent statements or representations, or makes or uses any false writing or document knowing the same to contain any false, fictitious or fraudulent statement or entry, shall be fined not more than $10,000 or imprisoned not more than five years, or both.

To sustain a conviction for making false statements in violation of § 1001, the prosecution must prove that "(1) the defendant made a statement; (2) the statement is false or fraudulent; (3) the statement is material; (4) the defendant made the statement knowingly and willfully; and (5) the statement pertained to an activity within the jurisdiction of a federal agency." *United States v. Lutz*, 154 F.3d 581, 587 (6th Cir.1998) (citing *United States v. Steele*, 933 F.2d 1313, 1318–19 (6th Cir. 1991)).

The Supreme Court has repeatedly stated that "the term 'jurisdiction' should not be given a narrow or technical meaning for the purposes of § 1001." *Bryson v. United States*, 396 U.S. 64, 70–71, 90 S.Ct. 355, 24 L.Ed.2d 264 (1969); *United States v. Rodgers*, 466 U.S. 475, 479–80, 104 S.Ct. 1942, 80 L.Ed.2d 492 (1984); *see also United States v. Gibson*, 881 F.2d 318, 322 (6th Cir.1989). Indeed, the Court has explained that "[a] department or agency has jurisdiction, in this sense, when it has the power to exercise authority in a particular

situation.... [T]he phrase 'within the jurisdiction' merely differentiates the official, authorized functions of an agency or department from matters peripheral to the business of that body." *Rodgers*, 466 U.S. at 479, 104 S.Ct. 1942.

We have held that a matter is within the jurisdiction of a federal agency for the purposes of § 1001 when the federal agency has power to exercise its authority, even if the federal agency does not have complete control over the matter. *Gibson*, 881 F.2d at 322–23. In *Gibson*, the defendant was convicted for violating § 1001 after he submitted false invoices to a private coal mining company. The coal mining company had a cost-plus contract with the Tennessee Valley Authority ("TVA") in which the amount that the TVA was charged depended on the cost of the company's materials and labor. *Id.* at 320. The defendant argued that the matter was not within the jurisdiction of a federal agency because the false invoices were not submitted directly to the TVA. *Id.* at 322. However, we stated that "[t]here is no implicit requirement that the statements be made directly to, or even be received by, the federal department or agency." *Id.* Because the false invoices were sent to a private company that was required to make regular reports to a government agency, and because the federal agency retained the ultimate authority to see that the federal funds were properly spent, we concluded that the false statements in the case pertained to a matter that was within the jurisdiction of a federal agency. *Id.* at 323.

Similarly, in *United States v. Lewis*, 587 F.2d 854, 855–57 (6th Cir.1978), we upheld a § 1001 conviction involving a defendant who had made false statements to a state agency on grounds that the agency had received federal support and was subject to federal regulation. In *Lewis*, the defendant, who was employed and received outside income, denied that she was employed and stated that she had not received any outside income in order to obtain benefits under the Aid to Families of Dependent Children ("AFDC") program. The AFDC program was operated by the Michigan Department of Social Services and the program was funded by both the state and federal government. *Id.* at 855. Even though there was no reference to any federal involvement in the program on the forms that the defendant prepared or the benefit checks that she received, we still concluded that the matter was within the jurisdiction of a federal agency. *Id.* at 855–56. Because the falsified eligibility information affected the right of the state to participate in the federal program and to obtain its share of federal reimbursement money, we held that the defendant's conduct satisfied the jurisdictional element of the § 1001 violation. *Id.* at 856.

Based on *Gibson* and *Lewis*, we conclude that the false statements in the present case pertained to a matter within the jurisdiction of a federal agency. Shafer's contract with the Michigan Department of Military Affairs to remove the underground storage tanks was funded entirely by the federal government, and the contract to install new storage tanks was jointly funded by the federal and state government, with the federal government paying seventy-five percent and the state paying twenty-five percent of the project. Furthermore, the contract required Shafer's company to pay the workers on the project the "prevailing" wage in accordance with the Davis–Bacon Act, 40 U.S.C. § 276a, pursuant to which the Department of Labor has the authority to supervise and investigate the payroll certification statements that Shafer submitted to the Michigan Department of Military Affairs. See 29 C.F.R. § 1.1 (1999). Because the false statements in this case were made to a state agency that received federal support and was subject to federal regulation, the false statements made by Shafer involve a matter that falls squarely within the jurisdiction of an agency or department of the United States.

## B. Relevant Conduct Under U.S.S.G. § 1B1.3

 Shafer also challenges the district court's decision to include in its sentencing calculation the losses that his workers suffered when he failed to pay them overtime wages for their work on non-government contracts.[1] There are inconsistent opinions in this circuit regarding the proper standard of review in cases where a district court has determined that certain activity qualifies as "relevant conduct" under § 1B1.3(a)(2). *Compare United States v. Hill*, 79 F.3d 1477, 1481 (6th Cir.), *cert. denied*, 519 U.S. 858, 117 S.Ct. 158, 136 L.Ed.2d 102 (1996) ("[I]n analyzing whether [criminal activity] should count as relevant conduct, we review the district court's determination de novo."), *with United States v. Kappes*, 936 F.2d 227, 229 (6th Cir.1991) ("Whether an activity is considered 'relevant conduct' under the Sentencing Guidelines is a question of fact which should not be disturbed unless found to be clearly erroneous."). Because the district court's determination that the activity in this case constitutes "relevant conduct" under the Sentencing Guidelines involves the application of law to fact, we review the district court's determination de novo. *See, e.g., United States v. McDonald*, 165 F.3d 1032, 1034 (6th Cir.1999) (stating that "a district court's determination of whether the facts constitute an obstruction of justice [for purposes of the Sentencing Guidelines] is a mixed question of law and fact that is reviewed *de novo*.") (emphasis in original).

 This case raises an issue that has yet to be directly addressed in this circuit, i.e., whether the relevant conduct provision of § 1B1.3(a)(2) only provides for the consideration of criminal conduct or whether this provision also provides for the consid-

eration of conduct that is not of a criminal nature. Our cases have interpreted the relevant conduct provision of § 1B1.3(a)(2) to include conduct of a criminal nature for which a defendant could not otherwise be held criminally liable. *See, e.g., United States v. Pierce*, 17 F.3d 146, 150 (6th Cir.1994) (holding that the statute of limitations does not restrict what a district court could consider as relevant conduct under the Sentencing Guidelines); *United States v. Moreno*, 933 F.2d 362, 374 (6th Cir.1991) (holding that a defendant's acquittal on a conspiracy count did not prevent the district court from considering conduct underlying the count in determining defendant's base offense level); *United States v. Myers*, 123 F.3d 350, 364 (6th Cir.1997) (holding that other drug transactions not charged in a criminal indictment were properly included as relevant conduct in a sentencing calculation). The Application Notes also suggest that certain conduct may be included as "relevant conduct" even though a defendant could not be held criminally liable for the same conduct. U.S.S.G. § 1B1.3, n. 1 ("The principles and limits of sentencing accountability under this guideline are not always the same as the principles and limits of criminal liability.").

There is a difference, however, between conduct that does not lead to a criminal conviction for technical reasons, such as criminal activity that was not included in an indictment or criminal conduct for which the statute of limitations has expired, and conduct that could never lead to a criminal conviction because the conduct is not of a criminal nature. Indeed, we believe the Sentencing Guidelines simply do not provide for the consideration of conduct under § 1B1.3(a)(2) unless that conduct involves an offense that could lead

---

1. Shafer does not challenge the district court's determination that the conduct—his failure to pay his workers overtime wages for their work on non-government projects—actually occurred. In most instances, a sentencing court may rely on undisputed facts that are recited in a presentence report to

conclude that the defendant committed acts offered as relevant conduct. *United States v. Pinnick*, 47 F.3d 434, 437 (D.C.Cir.1995). Furthermore, "a defendant's 'failure to contest the facts' leaves 'little doubt the[ ] acts occurred.'" *Id.* (quoting *United States v. Ramirez*, 11 F.3d 10, 14 (1st Cir.1993)).

to a criminal conviction resulting in prison time. Accordingly, we now explicitly hold that a district court may not include conduct in its sentencing calculation pursuant to § 1B1.3(a)(2) unless the conduct at issue amounts to an offense for which a criminal defendant could potentially be incarcerated.

The relevant conduct at issue in the present case involves Shafer's failure to pay his workers overtime wages for their work on non-government projects in violation of the Fair Labor Standards Act ("FLSA"). 29 U.S.C. §§ 201–219. The FLSA requires an employer to compensate an employee who works over forty hours a week "at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a)(1). The FLSA also includes criminal sanctions for a willful violation of the Act, although these sanctions are rarely, if ever, enforced.[2] *See* 29 U.S.C. § 216(a). Indeed, the FLSA specifically states that:

> Any person who willfully violates any of the provisions of section 215 of this title shall upon conviction thereof be subject to a fine of not more than $ 10,000, or to imprisonment for not more than six months, or both. *No person shall be imprisoned under this subsection except for an offense committed after the conviction of such person for a prior offense under this subsection.*

*Id.* (emphasis added). Pursuant to this statute, Shafer could have received a fine if he had actually been charged with and convicted of the FLSA violations, but he could not have received any prison time given that he has never before been convicted of violating the FLSA. Because Shafer would not have received any prison time had he been criminally prosecuted for the FLSA violations, his failure to pay overtime wages for work on the non-government contracts is conduct that should not have been included in his base offense level pursuant to § 1B1.3(a)(2).

We recognize that this case is somewhat analogous to *United States v. Pierce*, 17 F.3d at 150, a case in which we held that the statute of limitations does not restrict what a district court may consider as relevant conduct under the Sentencing Guidelines. We believe, however, that the policy considerations underlying our decision in *Pierce* are different from the considerations that have led us to conclude that Shafer's FLSA violations should not be included as relevant conduct. In *Pierce*, the defendant could have been sent to prison for the criminal conduct that was included as relevant conduct had he been charged before the statute of limitations expired. *Id.* In the present case, by contrast, Shafer would not have been subject to incarceration for the FLSA violations under any circumstances. Indeed, Congress has made it clear that an individual shall not receive prison time for a FLSA violation unless that individual has already been convicted of a criminal violation of the FLSA. 29 U.S.C. § 216(a). Because Shafer has never before been convicted of a FLSA violation, we believe that it would be inconsistent with 29 U.S.C. § 216(a) to include the unpaid overtime wages as relevant conduct. Thus, we conclude that the district court erred when it included the

---

**2.** The Department of Justice, upon the recommendation of the Secretary of Labor, has the authority to prosecute those individuals who willfully violate the FLSA, but criminal prosecutions for FLSA violations are rare. *See* Lisa Morowitz, *Government Contracts, Social Legislation, and Prevailing Woes: Enforcing the Davis Bacon Act,* 9 In Pub Interest 29, 35 (1989) (stating that "[a] study by the [General Accounting Office] of [the Department of Labor's] Fair Labor Standards Act (FLSA) en-

forcement practices ... indicates that regional directors in at least four regions could not recall having filed a criminal suit under the Act in more than ten years") (footnote omitted); *Meek v. United States,* 136 F.2d 679, 679–80 (6th Cir.1943) (upholding conviction under FLSA after employer fired an employee who complained about possible FLSA violations); *United States v. Ewald Iron Co.,* 67 F.Supp. 67 (W.D.Ky.1946).

FLSA violations in its sentencing calculation pursuant to § 1B1.3(a)(2).

### III. CONCLUSION

The district court properly determined that the false statements in this case pertained to a matter that is within the jurisdiction of a federal agency, but the district court should not have included Shafer's failure to pay overtime wages to his workers as relevant conduct in its sentencing calculation. Therefore, we **AFFIRM** the conviction, but **VACATE** Shafer's sentence and **REMAND** the case to the district court for resentencing consistent with this opinion.

WELLFORD, Circuit Judge, concurring.

Were I not constrained by precedent in this circuit, I would reach a contrary decision on the issue of guilt with respect to the charge of filing false statements in violation of 18 U.S.C. § 1001. As set out in Judge Moore's opinion, the statute covers wilful falsification, concealment or cover-up, or fraudulent statements or representations on a written form "in any matter within the jurisdiction of any department or agency *of the United States.*" (Emphasis added.)

The Supreme Court cases relied upon in *United States v. Gibson*, 881 F.2d 318 (6th Cir.1989), and *United States v. Lewis*, 587 F.2d 854 (6th Cir.1978), all involve misrepresentations made to *federal* agencies and bodies. *Bryson v. United States*, 396 U.S. 64, 90 S.Ct. 355, 24 L.Ed.2d 264 (1969), involved a false affidavit furnished to the National Labor Relations Board. *United States v. Rodgers*, 466 U.S. 475, 104 S.Ct. 1942, 80 L.Ed.2d 492 (1984), involved written false material furnished to the Federal Bureau of Investigation.[1] No Supreme

Court case noted involves a written statement to a state or *non-*federal government department or agency.

The statute itself is plain and unambiguous; it refers to federal agencies of the United States, not to those of state or private departments, agencies, or instrumentalities. One charged with an offense under the statute would not expect to be confronted with a charge connected with some statement or submission to a department or agency that is not a United States instrumentality.

It is true, however, that despite the statutory language and the lack of Supreme Court precedent supporting that position, the Sixth Circuit has construed the statute to include "matters not completely controlled by these departments or agencies," or statements not "made directly to, or received by, the federal department or agency." *Gibson*, 881 F.2d at 322 (citing *Lewis, supra,* and cases from other circuits). *Gibson*, however, involved the investigation of fraud in a TVA contract, with a warning in the document requiring conformity to "federal requirements" and filing reports to the "TVA Contracting Officers." *Id.* The dissenting opinion in *Gibson* found it important to determine whether the defendant had knowledge of the federal government involvement.

While I doubt the correctness of the Sixth Circuit precedent noted above, we are bound to follow that precedent. I therefore concur in the result reached as to part II.A. of the panel opinion.

I also concur in the result reached in part II.B. of the opinion dealing with relevant conduct in the sentencing of Shafer. I am in basic agreement with the distinction drawn between taking into account relevant conduct of a direct criminal nature in sentencing and counting as rele-

1. *United States v. Gilliland*, 312 U.S. 86, 61 S.Ct. 518, 85 L.Ed. 598 (1941), cited in *Rodgers,* involved a written false material submitted to the Secretary of the United States Department of Interior. *United States*

*v. Bramblett*, 348 U.S. 503, 75 S.Ct. 504, 99 L.Ed. 594 (1955), also cited in *Rodgers*, involved the United States House of Representatives.

vant conduct that which "could never lead to a criminal conviction." I would add in this context, however, that a sentencing court should be able to consider as relevant conduct that is proximately related to or inextricably tied to criminal conduct of the defendant or an accomplice or associate, although not strictly "criminal" in its consequence. Such conduct might include grossly indecent or immoral conduct affecting another's criminal act, or persuading and cajoling another to commit a criminal offense if deemed "relevant" and material by the sentencing judge.[2]

In any event, despite my added reservations, I would concur that "the district court erred when it included the FLSA violations in its sentencing calculations in this case."

---

**2.** I would not preclude the sentencing judge from taking such conduct into account to counterbalance a claimed basis for a downward departure.