**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Frederick HENDERSON, Defendant–**
**Appellant.**

**No. 00–5515.**

United States Court of Appeals,
Sixth Circuit.

Aug. 22, 2001.

Before SILER and GILMAN, Circuit Judges, and GIBBONS, District Judge *.

GIBBONS, United States District Judge.

Defendant Frederick Henderson pled guilty to two counts of distributing cocaine base in violation of 21 U.S.C. § 841(b)(1)(C). The district court sentenced him according to the recommendations in the presentence report ("PSR"), in which the probation officer took into consideration Henderson's admissions that he had purchased and distributed approximately 3½ ounces of crack cocaine in 1999, and had distributed approximately 8 to 9 ounces between 1995 and 1999. The dis-

trict court found that those previous dealings were part of the same course of conduct as the charged offenses and held Henderson responsible for distributing a total of 8 ounces of crack cocaine. The court sentenced him to 168 months in prison, to be followed by six years of supervised release. Henderson now appeals his sentence, arguing that the district court erred in considering his admissions as relevant conduct. For the following reasons, we affirm.

In October of 1997, local law enforcement officers began investigating a group called the "Dawg Pound," which allegedly was responsible for a substantial amount of cocaine trafficking in Lincoln County, Tennessee. On January 23, 1999, defendant Henderson sold .2 grams of cocaine hydrochloride (cocaine powder) to a confidential informant working with the officers, and on March 28, 1999, he sold .6 grams of cocaine base (crack) again to a confidential informant. Based on those sales, Henderson was charged on September 14, 1999, in a two-count indictment for distribution of cocaine in violation of 21 U.S.C. § 841(b)(1)(C).

On December 8, 1999, Henderson, being represented by counsel, pled guilty to both counts without a plea agreement. On March 13, 2000, the district court conducted a sentencing hearing and considered the circumstances described in paragraphs 9 and 10 of the presentence report ("PSR"):

9. The defendant was arrested by local authorities on August 26, 1999, in Fayetteville. After being advised of his rights by law enforcement personnel, Mr. Henderson stated that he had been selling cocaine for the previous eight months. He identified his source for

* Honorable Julia S. Gibbons, Judge, United States District Court for the Western District of Tennessee, sitting by designation.

cocaine and estimated that he had purchased and distributed approximately 3½ ounces (99.2 grams) of crack cocaine in the previous eight months.

10. Mr. Henderson was interviewed again on October 14, 1999, after his arrest on the federal warrant. He again waived his rights and talked about having sold crack cocaine since 1995, he stated that from 1995 until 1996, he was purchasing crack cocaine from a source in Nashville. He estimated that he purchased 1/4–ounce quantities of crack from this source on 20 to 30 occasions. He related that he was sent to prison on August of 1996 after being convicted of possession of crack cocaine for resale. He admitted that soon after his release (in about July of 1998), he began selling cocaine again. He confessed that between July of 1998 and August of 1999, he bought about 1/4–ounce of crack cocaine on five or six occasions. He also admitted having purchased about 1/4–ounce of cocaine hydrochloride. He estimated that he sold a total of eight to nine ounces of crack cocaine between 1995 and 1999.

(Emphasis in original). Based on Henderson's own statements, the probation officer concluded in the PSR that Henderson should be held accountable for the distribution of eight ounces (226.8 grams) of crack cocaine. Accordingly, using the Drug Quantity Table under United States Sentencing Guideline ("U.S.S.G.") § 2D1.1(c)(3), the probation officer set Henderson's base offense level at 34. After subtracting two level, for acceptance of responsibility (U.S.S.G. § 3E1.1(a)) and one level for timely notification of his guilty plea (U.S.S.G. § 3E1.1(b)), the resulting offense level was 31 with a guideline range of 168–210 months.

At sentencing, Henderson objected to the PSR's calculation of drug quantity because he claimed that using drug sales from 1995 was too far removed from the charged offenses, and the government did not corroborate Henderson's past drug activities through some evidence other than Henderson's own statements. The district court disagreed, however, and found that the PSR correctly reflected the relevant conduct and that it "properly figured in th[e] quantity." The district court sentenced Henderson to concurrent sentences of 168 months, at the low end of the applicable guideline range, to be followed by six years of supervised release. Henderson now appeals his sentence.

■■■ We review the district court's application of the Sentencing Guidelines *de novo*, and the findings of fact for purposes of sentencing for clear error. *United States v. Layne*, 192 F.3d 556, 578 (6th Cir.1999). "There are inconsistent opinions in this circuit regarding the proper standard of review in cases where a district court has determined that certain activity qualifies as 'relevant conduct.'" *United States v. Shafer*, 199 F.3d 826, 830 (6th Cir.1999). In a case such as this, where the facts are undisputed and the only question involves an application of law to the facts, our review is *de novo*. *Id.*; *see United States v. Hill*, 79 F.3d 1477, 1481 (6th Cir.1996) (finding that whether certain facts warrant the application of a particular guideline provision is a legal question to be reviewed *de novo*).

■■■ Henderson first argues that the district court erred by considering his prior drug trafficking as "relevant conduct" under U.S.S.G. § 1B1.3 because there was no proof other than his own admissions that such quantities were ever sold. He claims that admissions of a defendant at a sentencing hearing must be corroborated just as if the defendant were at trial. In support of that argument, Henderson relies on *Opper v. United States*, 348 U.S. 84, 75 S.Ct. 158, 99 L.Ed. 101 (1954), in which the Supreme Court held that admissions

and confessions of a defendant must be corroborated by "substantial independent evidence which would tend to establish the trustworthiness of the statement." *Opper,* 348 U.S. at 93, 75 S.Ct. 158. It is "sufficient if the corroboration supports the essential facts admitted sufficiently to justify a jury inference of their truth." *Id.* Here, Henderson argues, the principle in *Opper* applies equally at sentencing.

The government claims that the corroboration rule in *Opper* is not applicable at the sentencing stage. "The standard has always been that a sentence may not properly be imposed on the basis of material misinformation, ... but specific procedures, such as are required at trial, are simply not constitutionally mandated, especially when a guilty plea is entered." *United States v. Silverman,* 976 F.2d 1502, 1508 (6th Cir.1992) (citing *Roberts v. United States,* 445 U.S. 552, 100 S.Ct. 1358, 63 L.Ed.2d 622 (1980)). The government argues that Henderson's two separate statements admitting to drug trafficking in large quantities from 1995 through 1999, except for a 23-month period of incarceration, are uncontradicted and are sufficiently reliable for the court to consider in calculating the quantity of drugs to use in determining Henderson's sentence.

■ We find that the district court did not err in relying on Henderson's statements described in the PSR without requiring independent corroborating evidence. Henderson's admissions regarding the quantity of drugs sold were made freely, and he does not contest the truthfulness of his statements. "In most instances, a sentencing court may rely on undisputed facts that are recited in a presentence report to conclude that the defendant committed acts offered as relevant conduct." *Shafer,* 199 F.3d at 830 n. 1. Henderson has cited no authority for his position that the corroboration requirement described in *Opper* applies at sentencing. We agree with the government that, on the contrary, the procedures used at trial are generally not applicable at sentencing. *See Silverman,* 976 F.2d at 1508. Under these circumstances, we reject Henderson's claim that the district court's reliance on the PSR constitutes reversible error.

Henderson also claims that the district court erred in counting as "relevant conduct" cocaine sales that occurred between 1995 and 1996, almost four years prior to the sales charged in the indictment. As stated above, the PSR indicates that Henderson purchased and distributed approximately 3½ ounces (99.2 grams) of crack cocaine in 1999 in the eight months immediately prior to his arrest. Additionally, the PSR indicates that from 1995 to 1996 he purchased crack cocaine from a source in Nashville approximately twenty to thirty times until his incarceration in 1996. Henderson admitted that soon after he was released from jail in July of 1998 he began selling cocaine again. He estimated that between 1995 and 1999 he sold a total of 8 to 9 ounces (226.8 grams to 255.15 grams) of crack cocaine. From those statements, the district court found that Henderson's past drug dealing was "relevant conduct" pursuant to U .S.S.G. § 1B1.3. The court held Henderson accountable for the distribution of 8 ounces (226.8 grams) of crack cocaine.

Henderson objected to the use of his statements relating to his drug dealing activities between 1995 and 1999. Henderson's counsel argued, "I think it's quite a stretch to go back to 1995 and take his statements as to what he did between 1995 and 1999, that hasn't anything to do with what's relevant today, what's the same course of conduct of something that took place in 1999." The court rejected Henderson's argument, finding that his 1995–1999 activities related to the same

course of conduct and a common scheme or plan as the counts of conviction.

■ On appeal, Henderson challenges only the district court's consideration of his admissions regarding his drug activities that took place prior to his 1996 incarceration, which lasted from August 1996 to July 1998. He claims that his earlier conduct was simply not part of the same course of conduct nor part of a common scheme or plan in relation to the counts of conviction. He argues that the 23 months he spent in prison (presumably refraining from any drug dealing during that time) is a sufficient length of time to break up a course of conduct or interrupt a common scheme or plan. Because, he claims, it is impossible to tell how much of the eight ounces pre-dated his 1996–1998 incarceration, the whole amount should be disregarded and the court should punish him for only the .8 grams total from the counts of conviction.

Relevant conduct includes all acts committed by the defendant that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection for that offense. U.S.S.G. § 1B1.3(a)(1)(A). Relevant conduct also includes, with respect to offenses of a character for which § 3D1.2(d) would require grouping of multiple counts, all acts that were part of the same course of conduct, or common scheme or plan, as the offense of conviction. U.S.S.G. § 1B1.3(a)(2). A common scheme or plan means that the offenses are connected by at least one common factor, such as common victims, common accomplices, common purpose, or similar *modus operandi.* U .S.S.G. § 1B1.3, applic. note 9(A). The same course of conduct means the offenses are part of an ongoing series of offenses, or "if they warrant the conclusion that they are part of a single episode, spree, or ongoing series of offenses." U.S.S.G. § 1B1.3,

applic. note 9(B). Though "common scheme or plan" and "same course of conduct" do not mean exactly the same thing, they do overlap considerably. *Hill,* 79 F.3d at 1483.

The three factors relevant to determining whether certain activity constitutes the "same course of conduct" are whether the offenses include "the degree of similarity of the offenses, the regularity (repetitions) of the offenses, and the time interval between the offenses." U.S.S.G. § 1B1.3, comment (n.9(B)). When one of those factors is weak or absent, a stronger presence of at least one of the other factors is necessary to support a finding that certain activities constitute "relevant conduct." *Id.*

Henderson's history of drug dealing would easily fit into the "same course of conduct" category because of the high degree of similarity and regularity between the offenses. However, the 23–month hiatus in drug dealing arising from Henderson's 1996 incarceration indicates a significant temporal break in his course of conduct. Nevertheless, "a lapse of time between prior conduct and the offense of conviction does not necessarily indicate that a defendant abandoned a particular course of conduct; rather, such a lapse may result when participants are forced to put the venture 'on hold.'" *Hill,* 79 F.3d at 1483.

For example, in *United States v. Nunez,* 958 F.2d 196, 198 (7th Cir.1992), a finding of relevant conduct was upheld where a two-year lapse between the uncharged drug sales and the offense of conviction resulted in part because the buyer had been incarcerated during that time. Also, in *United States v. Cedano–Rojas,* 999 F.2d 1175, 1180 (7th Cir.1993), the court upheld a finding that the defendant had engaged in the same course of conduct when the prior drug transactions had oc-

curred approximately two years before the offense of conviction, during which time the supplier was unavailable. *See United States v. Jackson,* 161 F.3d 24, 30 (D.C.Cir.1998) (holding that where four-year lapse between prior drug transaction and offense of conviction resulted from unavailability of suppliers, prior drug transaction constituted relevant conduct because of high degree of similarity to offense of conviction).

 Our circuit "has never articulated a precise time bar after which conduct becomes irrelevant for sentencing purposes." *Hill,* 79 F.3d at 1483. Where the temporal proximity factor is weak, a stronger showing of similarity and regularity can satisfy the elements for the "same course of conduct." *Id.* at 1484 (citing *United States v. Hahn,* 960 F.2d 903, 911 (9th Cir.1992)). In the instant case, Henderson's drug trafficking activities during 1995 and 1999 are essentially indistinguishable. According to his own statement, Henderson dealt in cocaine in 1995 up until his 1996 incarceration, and he continued to deal similarly soon after his release in 1998. The twenty-three month break in business occurred only because he was "forced to put the venture 'on hold.'" *Id.* at 1483. Under these circumstances, the district court did not err in finding that the guideline factors weigh in favor of a finding that Henderson's 1995–1996 conduct constituted the "same course of conduct" as the offenses of his conviction.

Accordingly, we AFFIRM Henderson's sentence.