**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 16a0423n.06

No. 15-5511

**FILED**
Jul 27, 2016
DEBORAH S. HUNT, Clerk

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | **ON APPEAL FROM THE UNITED** |
| | ) | **STATES DISTRICT COURT FOR THE** |
| v. | ) | **EASTERN DISTRICT OF** |
| | ) | **TENNESSEE** |
| THADDIUS L. HUMPHREY, | ) | |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |
| | ) | |

BEFORE:     BOGGS, CLAY, and SUTTON, Circuit Judges.

**CLAY, Circuit Judge.** Defendant Thaddius Humphrey pleaded guilty, pursuant to a plea agreement, to conspiracy to distribute 28 grams or more of a mixture and substance containing a detectable amount of cocaine base ("crack cocaine"), in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B), and 846. The district court, relying on a drug quantity calculation derived from Humphrey's statement to a law enforcement officer, sentenced Humphrey to 151 months of imprisonment. On appeal, Humphrey's sole assignment of error pertains to the district court's calculation of his sentence based on this "uncorroborated" statement to law enforcement. For the following reasons, we **AFFIRM**.

## BACKGROUND

### Factual Background

Between September 2012 and June 2013, Humphrey conspired with others to distribute crack cocaine in Chattanooga, Tennessee. Law enforcement officers became aware of Humphrey's involvement in the conspiracy when they used a confidential informant ("CI") to make controlled purchases of crack cocaine from Humphrey and his co-conspirators on March 20, March 22,[1] and June 11, 2013.

On June 17, 2013, law enforcement officers executed a search warrant on Humphrey's residence, which was the location of at least two of the aforementioned controlled purchases. Officers knocked on Humphrey's door several times, announced that they had a search warrant, and removed the metal security door before entering the residence. Their entry apparently startled Humphrey, who was sleeping on a couch 10 or 15 feet away from the door, and he rolled off the couch and shattered a nearby glass table. After securing Humphrey, officers searched his residence and found digital scales, a pistol with four rounds of ammunition, $519 in U.S. currency, a small bag of marijuana, and a Crown Royal bag containing approximately 40 grams of a substance believed to be crack cocaine.

Approximately 30 to 40 minutes after securing Humphrey, Special Agent Rodd Watters, an officer with the Tennessee Bureau of Investigation, verbally advised Humphrey of his *Miranda* rights, which Humphrey waived, and conducted an interview. During this interview,

---

[1] At the March 22, 2013 controlled purchase, the CI learned that Humphrey had already sold the crack cocaine the CI sought to purchase to another buyer; thus, the CI instead bought 30 grams of powder cocaine from an unidentified seller.

Humphrey informed Agent Watters that he had been purchasing crack cocaine from an individual named "J" at a rate of half-an-ounce[2] per week for the past eight to ten months.

**Procedural Background**

In October 2013, Humphrey was indicted on four drug-related charges: (1) one count of conspiracy to manufacture and distribute 280 grams or more of crack cocaine between September 2012 and June 2013, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(a), and 846 ("Count 1"); (2) one count of distributing cocaine on March 22, 2013, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(C); (3) one count of distributing crack cocaine on June 11, 2013, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(C); and (4) one count of possessing with intent to distribute 28 grams or more of crack cocaine on June 17, 2013, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(B). In January 2015, Humphrey pleaded guilty, pursuant to a plea agreement, to a lesser included offense of Count 1: conspiracy to distribute 28 grams or more of crack cocaine in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B), and 846. As consideration for Humphrey's guilty plea, the plea agreement provided for the dismissal of the other three counts in the indictment.

Humphrey's presentence report ("PSR") included a criminal history category of VI and a base offense level of 30. The base offense level of 30, which was calculated using a drug quantity of 453 grams, was derived from Humphrey's statements to Agent Watters that he had been purchasing a half ounce of crack cocaine per week for eight to ten months.[3] *See* U.S.S.G. § 2D1.1(c)(5).

---

[2] The conversion rate between ounces and grams is 0.5 oz : 14.17 g.

[3] This figure was apparently calculated as follows: 0.5 oz/week x 4 weeks/month = 2.0 oz/month; 2.0 oz/month x 8 months = 16 oz; 16 oz = 453.59 g.

Humphrey objected to the PSR's 453-gram drug quantity calculation, arguing that the drug quantity at issue was actually only 68 grams[4] and yielded a significantly lower base offense level of 24. *See* U.S.S.G. § 2D1.1(c)(8). More specifically, Humphrey maintained that because: (1) he could not recall making a statement to Agent Watters about the quantity of his crack cocaine purchases; (2) he was intoxicated from smoking marijuana at the time of his interview with Agent Watters; and (3) the government failed to provide additional evidence corroborating his alleged statement to Watters regarding drug quantity, the government had not met its burden of showing, by a preponderance of the evidence, that Humphrey had distributed 453 grams of crack cocaine.

At sentencing, the government called Agent Watters as a witness in support of the PSR's 453-gram drug quantity calculation. Agent Watters testified to the following. After officers took Humphrey into custody and searched his residence, they found, among other things, 40 grams of crack cocaine, a firearm, and some high-grade marijuana. Watters smelled a strong odor coming from the marijuana, but did not think it had been smoked. When Watters asked Humphrey if there was anything illegal in the residence, Humphrey confirmed the presence of the firearm and crack cocaine.

Prior to interviewing Humphrey, Agent Watters advised him of his *Miranda* rights, which Humphrey verbally waived. When asked about his crack cocaine source, Humphrey stated that he had been obtaining a half ounce of crack cocaine per week from J for the past eight to ten months. Agent Watters then asked Humphrey why he had approximately 40 grams of crack cocaine at the time of the search, in response to which Humphrey stated that because J was going

---

[4] Humphrey's 68-gram calculation includes the one ounce (28 grams) of crack cocaine sold during the June 11, 2013 controlled purchase and the 40 grams of crack cocaine found at Humphrey's residence following the execution of the search warrant.

out of town, Humphrey had purchased more crack cocaine than usual in order to "hold him[self] over" until J's return. According to Agent Watters, when Humphrey was interviewed, he appeared to "have his wits about him" and seemed to understand the questions he was being asked. Further, because officers searched Humphrey's residence *before* the interview, "[Humphrey] probably had 30 or 40 minutes to regather himself before [Agent Watters] started questioning him." (R. 48, PageID# 192–93).

Following Agent Watters' testimony, defense counsel argued that because Humphrey could not recall discussing a person named J with Agent Watters, and the government had not presented "additional corroboration" that J existed or had sold a certain quantity of crack cocaine to Humphrey, the government had not put on sufficient evidence to prove that Humphrey distributed 453 grams of crack cocaine. The district court rejected this argument, noting that: (1) Agent Watters' sworn testimony provided evidence of the PSR's drug quantity calculation; (2) Humphrey never denied making the statement about drug quantity to Watters; (3) Humphrey demonstrated comprehension of Watters' questions when he confirmed the presence of the firearm and crack cocaine in response to the Watters' prior inquiry about whether there were illegal items in the residence; and (4) there was no reason for the district court to conclude that Humphrey's alleged intoxication from marijuana would have caused him to exaggerate the amount of crack cocaine he had purchased from J when speaking to law enforcement. Overruling Humphrey's objection to the PSR's drug quantity calculation, the district court accepted the PSR's total offense level of 29 and criminal history category of VI. These figures resulted in a guidelines range of 151 to 188 months of imprisonment, a period significantly lengthier than 77 to 96 month guidelines range Humphrey argued for based on a 68-gram drug

quantity calculation. After hearing from Humphrey and considering the sentencing factors under 18 U.S.C. § 3553(a), the district court sentenced Humphrey to 151 months of imprisonment.

## DISCUSSION

### I. Standard of Review

We review a district court's determination of drug quantity for clear error, *United States v. Treadway*, 328 F.3d 878, 883 (6th Cir. 2003), including those determinations made for the purpose of calculating a defendant's base offense level under U.S.S.G. § 2D1.1(c), *see United States v. Maliszewski*, 161 F.3d 992, 1018 (6th Cir. 1998); *United States v. Okayfor*, 996 F.2d 116, 120 (6th Cir. 1993). "A factual finding is clearly erroneous when a court, on reviewing the evidence, is left with the definite and firm conviction that a mistake has been committed." *United States v. Seymour*, 739 F.3d 923, 928 (6th Cir. 2014) (citation and quotation marks omitted). Accordingly, as long as the district court "interprets the evidence in a manner consistent with the record, we are required to uphold its decision even if we would have reached the opposite conclusion." *United States v. Darwich*, 337 F.3d 645, 663 (6th Cir. 2003) (citing *Anderson v. City of Bessemer City*, 470 U.S. 564, 573–74 (1985)).

### II. Analysis

As indicated, Humphrey's sole assignment of error arises from the district court's reliance on the PSR's drug quantity calculation, which, in turn, was used to determine Humphrey's base offense level. Section 2D1.1(c) includes the drug quantity tables for calculating a defendant's base offense level based on the type and amount of the controlled substance at issue. *See* U.S.S.G. § 2D1.1(c); *United States v. Johnson*, 569 F.3d 619, 624 (6th Cir. 2009); *United States v. Franco*, 318 F. App'x 411, 412 n.2 (6th Cir. 2009). "The government bears the burden of proving the quantity of drugs chargeable to a defendant for

sentencing purposes by a preponderance of the evidence." *United States v. Gibbs*, 182 F.3d 408, 440 (6th Cir. 1999) (citation and quotation marks omitted). However, "an estimate will suffice so long as it errs on the side of caution and likely underestimates the quantity of drugs actually attributable to the defendant." *United States v. Anderson*, 526 F.3d 319, 326 (6th Cir. 2008). As noted in Humphrey's brief, a district court's drug quantity calculation "must have 'some minimum indicium of reliability beyond mere allegation.'" *Gibbs*, 182 F.3d at 440 (quoting *United States v. Ward*, 68 F.3d 146, 149 (6th Cir. 1995)).

Humphrey's primary argument before this Court is that because he was intoxicated from smoking marijuana at the time he was interviewed by Agent Watters, his statement regarding drug quantity was unreliable. Relatedly, Humphrey maintains that due to the unreliability of this statement, the government could not establish the 453-gram drug quantity calculation by a preponderance of the evidence without additional corroborating evidence. In making these arguments, Humphrey relies on this Court's decision in *United States v. Robison*, 904 F.2d 365 (6th Cir. 1990), and seeks to distinguish his case from *United States v. Huffman*, 461 F.3d 777 (6th Cir. 2006).[5]

In *Robison*, the district court's drug quantity calculation for defendant Robison was based on the testimony of a co-defendant who was subject to periods of memory loss, described the relevant time period as a "very hazy time" due to her heavy drug use, testified that she "felt pressured" to provide law enforcement with a drug quantity estimate, and ultimately "guess[ed]"

---

[5] Humphrey's opening brief also discusses the corroboration rule, which requires that the government put on independent evidence tending to establish that a defendant's out-of-court statement regarding the commission of a crime is trustworthy if the defendant's case proceeds to trial. *See United States v. Huffman*, 461 F.3d 777, 786–87 (6th Cir. 2006). However, because Humphrey did not argue that this Court "should extend the corroboration rule to sentencing" until he filed his reply brief, this argument is deemed waived. *See Sanborn v. Parker*, 629 F.3d 554, 579 (6th Cir. 2010). Humphrey's failure to develop this argument in any meaningful way also warrants a determination that this argument is waived. *See United States v. Robinson*, 390 F.3d 853, 886 (6th Cir. 2004) (citation and quotation marks omitted).

about the drug quantity at issue without a factual basis for the figure she chose. 904 F.2d at 367–68, 371–72. On appeal, this Court found that the aforementioned flaws affecting the co-defendant's testimony rendered it too unreliable to be used as the basis for calculating Robison's base offense level. *Id.* at 371–72. Although Humphrey appears to contend that his statement regarding drug quantity was similarly unreliable, this argument is unpersuasive. As noted by the district court, Humphrey did not deny discussing drug quantity with Agent Watters, but instead asserted that he could not recall making such a statement due to his intoxication. The government called Agent Watters as a witness, and Watters testified that Humphrey admitted to purchasing a half ounce of crack cocaine per week for a period of eight to ten months. Agent Watters also testified that at the time of the interview, Humphrey appeared to understand the questions being addressed to him and had previously provided accurate answers to inquiries about whether there were any illegal items in the residence. At sentencing, the district court noted both of these points. The district court also found that Humphrey had failed to provide any evidence in support of his apparent contention that his intoxication from marijuana caused him to give Agent Watters an untrue or inflated description of the quantity of crack cocaine he was distributing. Finally, we observe that unlike in *Robison*, there is no evidence in the record indicating that Humphrey felt "pressured" to tell Agent Watters he was purchasing a certain quantity of drugs or "guessed" at a figure in making his statement to Watters.

In *Huffman*, we held that at the sentencing stage, a district court may rely on a defendant's uncorroborated out-of-court statement as long as the statement is "shown to be reliable and voluntary." 461 F.3d at 786–87. The *Huffman* panel based this conclusion in part on our earlier, unpublished decision, *United States v. Henderson*, in which we held that the district court did not err in relying on the defendant's admissions regarding drug quantity,

without further corroboration, where the statements "were made freely" and the defendant "d[id] not contest the truthfulness of his statements." 17 F. App'x 362, 365 (6th Cir. 2001). In this case, the evidence demonstrates that Humphrey's statement regarding drug quantity was made freely following a verbal waiver of his *Miranda* rights, and even on appeal, Humphrey does not deny the truthfulness of this statement. Even assuming, *arguendo*, that Humphrey was intoxicated from marijuana when he was interviewed by Agent Watters, he nonetheless managed to accurately communicate the presence of a firearm and crack cocaine to law enforcement, verbally waive his *Miranda* rights, and give the impression that he was coherent and understood the questions being addressed to him. Thus, there was no reason, on this record, for the district court to surmise that Humphrey was nonetheless incapable of reliably describing the amount of crack cocaine he had purchased as part of the conspiracy underlying the charge against him.

Importantly, Humphrey has provided no evidence that marijuana intoxication would have caused him to misstate the drug quantity he conveyed to Agent Watters, and this Court has previously declined to find clear error where the district court relied on an intoxicated but "reasonably coherent and articulate" defendant's statement to police in calculating the base offense level. *See United States v. Gibson*, 985 F.2d 860, 864 (6th Cir. 1993). Because Humphrey has neither shown that he was incoherent or inarticulate at the time of the interview nor demonstrated that his statement to Agent Watters was unreliable, we conclude that the district court did not clearly err in relying on his statement to Agent Watters in calculating his base offense level.

Finally, we note that the district court's 453-gram drug quantity calculation was a conservative estimate, given Humphrey's statement to Agent Watters, because it was based on

the assumption that Humphrey purchased crack cocaine for only eight months[6] despite his admission that he had been making such purchases for a period of eight to ten months. Overall, because the sentence imposed by the district court was appropriately based on a conservative drug quantity calculation, *see Anderson*, 526 F.3d at 326, which itself was derived from evidence of Humphrey's own statement to law enforcement, we find no reason to disturb the district court's factual findings, *see Darwich*, 337 F.3d at 663.

## CONCLUSION

Finding no clear error, we **AFFIRM**.

---

[6] *See supra* n.3.