NOT RECOMMENDED FOR PUBLICATION
File Name: 25a0279n.06

No. 24-1408

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

FILED
Jun 06, 2025
KELLY L. STEPHENS, Clerk

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

AMON SUDAN SANDERS-OUTLAW,

    Defendant-Appellant.

)
)
)
)
)
)
)
)
)
)

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF MICHIGAN

OPINION

---

Before: BATCHELDER, GIBBONS, and BLOOMEKATZ, Circuit Judges.

BLOOMEKATZ, Circuit Judge. Amon Sudan Sanders-Outlaw pleaded guilty to conspiring to sell drugs. At sentencing, the district court counted one of Sanders-Outlaw's prior offenses—a drug-trafficking conviction from state court—toward his criminal history score. That raised his advisory Sentencing Guidelines range. The district court then imposed a within-Guidelines sentence of 168 months of imprisonment. Sanders-Outlaw now appeals his sentence. He argues that his criminal history score should not have included his state conviction because it involved "relevant conduct" to his federal offense. But Sanders-Outlaw hasn't shown that his past and present offenses were sufficiently connected. We affirm.

**BACKGROUND**

Sanders-Outlaw's appeal implicates two of his convictions: a past conviction from state court, and the present conviction in federal court. We describe both here, construing the facts, which Sanders-Outlaw does not dispute, as the district court did.

**I.**     **State Offense**

In May 2021, police investigated Anthony Sanders, who is Sanders-Outlaw's brother, for possible drug trafficking. During the investigation, police had confidential informants buy drugs directly from Sanders at least twice. One of those buys occurred at an apartment in Kentwood, Michigan. Soon after, police applied for a warrant to search the apartment. On the day they planned to execute the warrant, while surveilling that apartment beforehand, law enforcement saw Sanders-Outlaw leave the building, walk to a car in the parking lot, appear to sell drugs to the driver, and return to the apartment. Police then executed the warrant. Inside the apartment, they arrested Sanders-Outlaw. They seized cash, fentanyl, methamphetamine, phones, and a gun. Police also arrested a man named Anthony Mcconer, who had left the apartment before they searched it.

The police interviewed the apartment's tenant, Mcconer's girlfriend. She told police that Sanders-Outlaw had flushed drugs down the toilet before the police arrived and that she believed the gun belonged to him. She also said that she thought Sanders had been supplying drugs to Sanders-Outlaw and Mcconer.

Police searched one of the phones from the apartment and determined that it belonged to Sanders. The phone contained videos and photos showing Sanders, drugs, money, and guns. Police had also seized a phone from Sanders-Outlaw when they arrested him. When they searched Sanders-Outlaw's phone, they found text-message conversations in which he appeared to tell customers that he was no longer working for his brother and that prices would be changing as a result.

Sanders-Outlaw pleaded guilty in state court to delivery of methamphetamine. The state court sentenced him to a term of thirty months to twenty years in custody.

## II.      Federal Offense

After Sanders-Outlaw had been arrested but before he had been sentenced in state court, law enforcement started a new drug-trafficking investigation of Sanders. Officers arranged for undercover individuals and confidential informants to buy fentanyl and methamphetamine from Sanders. They carried out transactions, once directly with Sanders, twice with another accomplice, and four times with Sanders-Outlaw, who was delivering on Sanders's behalf. Sanders-Outlaw told an undercover officer during a February 2023 buy that he and his brother were "like a tag team." Compl., R. 1-1, PageID 20.

In April 2023, officers executed a search warrant at a house in Grand Rapids where they had previously observed Sanders-Outlaw. In the house, they seized methamphetamine, fentanyl, a scale, phones, guns, and ammunition. Law enforcement subsequently arrested both Sanders and Sanders-Outlaw. Their phones contained messages in which they coordinated selling drugs, and in which Sanders directed Sanders-Outlaw's sales. Police learned from another co-conspirator that Sanders sometimes sent Sanders-Outlaw to pick up methamphetamine from Detroit. Other than Sanders and Sanders-Outlaw, the 2021 and 2023 drug rings involved different people.

## III.     Procedural History

A grand jury indicted Sanders-Outlaw, Sanders, and one of their accomplices on charges of conspiracy to distribute methamphetamine and fentanyl, along with several substantive drug charges. *See* 21 U.S.C. §§ 846, 841(a)(1), 841(b)(1)(C). Sanders-Outlaw pleaded guilty to the conspiracy charge and the government dropped the remaining charges. At sentencing, Sanders-Outlaw argued that his 2021 drug offense was "relevant conduct" to his federal conspiracy conviction, so his state-court conviction should not count toward his criminal history score under the Guidelines. *See* U.S.S.G. § 4A1.2(a)(1) & cmt. n.1. The district court disagreed, noting the

"significant gap of time" between his offenses and the differences in how the 2021 and 2023 drug rings operated. Sent'g Tr., R. 189, PageID 1755–58. It calculated Sanders-Outlaw's Guidelines range at 168 to 210 months and imposed a within-Guidelines sentence of 168 months.

Sanders-Outlaw timely appealed.

## ANALYSIS

### I. Standard of Review

Sanders-Outlaw argues the district court miscalculated his criminal history score, resulting in a procedurally unreasonable sentence. *See United States v. Rayyan*, 885 F.3d 436, 440 (6th Cir. 2018). We review the district court's calculation for abuse of discretion, adopting its underlying factual findings unless they are clearly erroneous and answering legal questions de novo. *Id.* Our cases conflict on whether the ruling Sanders-Outlaw challenges—that his activities qualified as "relevant conduct" under U.S.S.G. § 1B1.3(a)(2)—is a factual finding or a legal conclusion. *See United States v. Caballero-Lazo*, 788 F. App'x 1014, 1015 (6th Cir. 2019) (collecting cases). We need not resolve that issue here, however. For the reasons below, we would reach the same conclusion under either standard: the district court did not err.

### II. Relevant Conduct

A district court calculates a defendant's advisory Sentencing Guidelines range by considering, among other things, the defendant's criminal history. *See Molina-Martinez v. United States*, 578 U.S. 189, 193 (2016). A defendant's criminal history "score" counts previous conduct for which they were convicted and sentenced. U.S.S.G. § 4A1.2(a). But it does not include the present offense or "relevant conduct" associated with it. *See id.* § 4A1.2(a)(1) & cmt. n.1. In the context of drug-trafficking crimes, "relevant conduct" means actions that "were part of the same course of conduct or common scheme or plan as the offense of conviction." *See id.* § 1B1.3(a)(2);

*United States v. Hill*, 79 F.3d 1477, 1481–82 (6th Cir. 1996). So at bottom, a defendant's criminal history score for a drug offense should not include convictions stemming from the "same course of conduct" or a "common scheme or plan." U.S.S.G. § 1B1.3(a)(2). The Guidelines define "common scheme or plan" and "same course of conduct" differently, so we analyze them separately. *United States v. Henderson*, 17 F. App'x 362, 366 (6th Cir. 2001). But the concepts "do overlap considerably," *id.*, so we note the relevant overlaps when they arise.

Sanders-Outlaw argues that his 2021 state offense was relevant conduct to his conviction here because together, they constituted a "common scheme or plan" and were part of the "same course of conduct." Appellant's Br. at 8–9. As a result, he argues, his criminal history score should not have included his 2021 conviction. On appeal, Sanders-Outlaw bears the burden of showing that his past offense was "relevant conduct" to the present one. *Caballero-Lazo*, 788 F. App'x at 1016. He fails to meet that burden.

A.      **Common Scheme or Plan**

Sanders-Outlaw argues that his past and current offenses are part of a common scheme or plan. For that to be true, "they must be substantially connected to one another by at least one common factor, such as common victims, common accomplices, common purpose, or similar modus operandi." U.S.S.G. § 1B1.3 cmt. n.5(B)(i). Sanders-Outlaw makes three arguments on this point. *First*, he contends that his 2021 and 2023 offenses shared a common accomplice: his brother, Sanders. *Second*, he says the offenses shared a modus operandi: "setting up deals on the telephone or through text messages and making hand-to-hand sales." Appellant's Br. at 15. And *third*, Sanders-Outlaw argues that both crimes shared a common purpose: selling methamphetamine and fentanyl. None of these arguments prevails.

To start, the record is unclear on how much Sanders-Outlaw and his brother worked together before 2023. As the district court noted, Sanders-Outlaw sent messages to customers in 2021 indicating that he was working independently from his brother and was setting his own prices. Although Sanders-Outlaw insists that his brother rented him vehicles to sell drugs in 2021, Sanders-Outlaw's own text messages show him asking for others' help with securing a car. Even if the brothers did work together in 2021, Sanders-Outlaw hasn't shown they did so during the twenty-month gap in between his two cases, such that Sanders was an accomplice in a continuing scheme or plan. *See, e.g.*, *United States v. Easley*, 306 F. App'x 993, 996 (6th Cir. 2009); *United States v. Faison*, 339 F.3d 518, 521 (6th Cir. 2003). Indeed, Sanders-Outlaw was arrested on drug charges at least two times between 2021 and 2023, but the presentence report does not name Sanders as a co-conspirator in either case. In any event, Sanders-Outlaw has not cited any authority showing that one common accomplice can render his two drug offenses, which otherwise involved entirely different people, part of a common scheme or plan.

Sanders-Outlaw's arguments on "modus operandi" fare no better. In describing the similarities between his 2021 and 2023 drug offenses, he emphasizes that both involved "setting up deals on the telephone or through text messages and making hand-to-hand sales." Appellant's Br. at 15. But neither using a phone to arrange drug deals nor selling drugs by hand is particularly unique. *See United States v. Underwood*, 129 F.4th 912, 925 (6th Cir. 2025); *Pennsylvania v. Dunlap*, 129 S. Ct. 448, 449 (2008) (mem) (Roberts, C.J., dissenting from denial of cert.). Indeed, if text-messaged plans and hand-to-hand deals were enough to show that drug offenses constituted a "common scheme or plan," then repeat drug traffickers' past offenses would rarely count toward their criminal history scores. We decline to view Sanders-Outlaw's offenses at "a level of generality that would render worthless the relevant conduct analysis." *Hill*, 79 F.3d at 1483.

Sanders-Outlaw also lacks other indicators of a common modus operandi. For example, the record is silent on whether he received his drugs from the same source or sold them to the same people in 2021 and 2023. *See, e.g.*, *United States v. Ridley*, 9 F. App'x 445, 448 (6th Cir. 2001); *United States v. West*, 962 F.3d 183, 189 (6th Cir. 2020).

Sanders-Outlaw's final argument, that his offenses shared the purpose of selling methamphetamine and fentanyl, also falls short. We have squarely rejected the proposition that, without more, selling the same kinds of drugs on separate occasions amounts to a common "modus operandi." *Hill*, 79 F.3d at 1484. As a result, we hold that Sanders-Outlaw has failed to demonstrate that his 2021 and 2023 offenses formed a "common scheme or plan."

## B. Same Course of Conduct

Next, Sanders-Outlaw contends that his 2021 drug offense was part of the "same course of conduct" as his conviction here. A defendant's offenses constitute parts of the same "course of conduct" when they're "sufficiently connected or related" for the court to conclude "that they are part of a single episode, spree, or ongoing series of events." U.S.S.G. § 1B1.3 cmt. n.5(B)(ii). We consider "the degree of similarity of the offenses," their "regularity," and the "time interval between the[m]." *See id.* And, "[w]hen one of [these] factors is absent," we require "a stronger presence of at least one of the other factors." *Id.*

Sanders-Outlaw has not demonstrated that his 2021 and 2023 crimes are linked either by their closeness in time or by the regularity of his actions. We begin with the gap in time. As Sanders-Outlaw concedes, twenty months elapsed between his arrest in 2021 and his first involvement in this case. We have held that a nineteen-month gap between drug offenses amounted to "extremely weak" temporal proximity. *See Hill*, 79 F.3d at 1484. The same is true here. As for regularity, Sanders-Outlaw cites a single line in the presentence report, which states that he "was

aware of and participated regularly in his brother's drug-trafficking activities." Appellant's Br. at 13–14. Yet that portion of the presentence report describes only Sanders-Outlaw's conduct in 2023. As noted above, the record is unclear on whether Sanders-Outlaw continued regularly selling drugs with Sanders between 2021 and 2023. *See, e.g.*, *United States v. Gibbs*, 646 F. App'x 403, 412 (6th Cir. 2016); *United States v. Gilbert*, 173 F.3d 974, 976–78 (6th Cir. 1999).

Because the other two factors are weak, Sanders-Outlaw's challenge comes down to whether he has made a strong showing that his drug-trafficking activities in 2021 were similar to those in 2023. He has not done so. To determine whether a prior offense is sufficiently "similar" to the present one, we look to "the same factors listed as supporting a finding of a common scheme or plan." *United States v. Phillips*, 516 F.3d 479, 485 n.5 (6th Cir. 2008) (cleaned up). As we have explained, Sanders-Outlaw has not demonstrated that his 2021 and 2023 offenses amounted to a "common scheme or plan." *See supra* Part II.A. For the same reasons, Sanders-Outlaw fails to establish that those actions were similar enough to constitute a single "course of conduct." He responds that a "high degree of similarity and regularity between" offenses can overcome a twenty-month gap separating them. Appellant's Br. at 17–18 (quoting *Henderson*, 17 F. App'x at 366). But for reasons already stated, there is not a "high degree of similarity and regularity" between his offenses. In sum, Sanders-Outlaw has not shown that his 2021 offense was part of the same course of conduct as his present conviction.

## CONCLUSION

We affirm Sanders-Outlaw's sentence.